**H. Kramer & Company, Appellee, v. Charles Cummings et al., on appeal of Thomas Condon and Henry Burkholder, Appellants.**

**Gen. No. 26,894.**

1. TRUSTS—*nature and extent of liability of trustees under business trust.* One who entered into a contract with a business trust for the sale of goods, with full knowledge of the character of the trust in question and the terms of its articles of association, could not recover the purchase price in an action predicated upon the individual and joint liability of those named as trustees and not as to their liability as trustees to the extent of the assets of the trust.

2. TRUSTS—*creation by agreement for holding and management of property of contributors and for liability of managers.* A trust was created by a declaration by three parties by which they as trustees were to take title to and the management of all property, and receive contributions of money or other property for which trustees' certificates or receipts were to be issued, and manage and control the same for the benefit and profit of all contributors or shareholders, and providing that all extending credit to or contracting with or having any claim against the trustees should look

only to the fund or property of the trust, and that neither trustees, shareholders nor officers should be personally liable.

Appeal from the Municipal Court of Chicago; the Hon. FRANK H. GRAHAM, Judge, presciding. Heard in the Branch Appellate Court at the March term, 1921. Reversed. Opinion filed April 18, 1922.

CASTLE, WILLIAMS, LONG & CASTLE, for appellants.

MICHAEL MANN and LEON EDELMAN, for appellee.

MR. JUSTICE BARNES delivered the opinion of the court.

This suit was brought to recover $177.12, the price of goods sold and delivered. The court found the issues for plaintiff and entered judgment for that sum against the several defendants. Two of the defendants, Condon and Burkholder, have appealed. The main question is whether the evidence was sufficient to establish a joint liability, or any liability, on the part of defendants.

Condon, Burkholder and Cummings entered into a written agreement with one another, termed "Declarations of Trust of Roman Metals Co., Ltd.," by which they, as trustees, were to take title to all property, including manufacturing processes and plants, and take the management, etc., of such processes and plants, receive contributions of money or other property, for which they would issue trustees' certificates or receipts, and manage and control the same for the benefit and profit of all contributors or shareholders, their assigns or successors. In such management and control they were free from any power or control over them or the business by the certificate holders, and were to be designated in their collective capacity as the "Roman Metals Company." The declaration provided that:

"All who extend credit to, or contract with, or have any claim against the trustees shall look only to the

funds or property of the trust for the performance or payment thereof, * * * so that neither the trustees, shareholders, nor officers, present or future, shall be personally liable therefor."

Certain other powers of the trustees and limitations thereon are enumerated, but a recital of them is unnecessary to a determination of the question before us.

It is not questioned that the goods were purchased for and delivered to the Roman Metals Company and billed to it. Credit does not appear to have been given to any of the other defendants, individually or collectively. The transaction as to the order for the goods took place between Chapman, plaintiff's agent, and defendant Condon. Their versions of it differed. Chapman testified that Condon told him to send the bill to the Roman Metals Company, and he or Cummings would see that it was paid. Condon testified that Chapman inquired specifically whether the goods were for him and Cummings personally, and whether the company was incorporated, and that he fully explained to Chapman the character of the company, that it was not a corporation or copartnership, that its articles "were on file in the records of Cook County," that they were not personally liable and he would have to look to the company for payment; that thereupon Cummings said he would do so, and sent the goods to the company, and bills for the goods in its name. Chapman did not deny this specific testimony by Condon, and, therefore, plaintiff must be presumed to have entered into the transaction with full knowledge of the character of the company and the terms of its articles of association. If the contract was not made with the trustees acting in such capacity, then according to Chapman's testimony it was made either with Condon individually, in which case there was no joint liability, or with Condon as a partner of Cummings and Burkholder.

The character of an association, with similar articles, was very extensively discussed in *Williams v. City of Waltham*, 215 Mass. 1, where the court, analyzing various cases, draws a distinction between a trust and partnership, the theory of which is succinctly expressed in *Frost v. Thompson*, 219 Mass. 360 (365) as follows:

"A declaration of trust or other instrument providing for the holding of property by trustees for the benefit of owners of assignable certificates, representing the beneficial interest in the property, may create a trust or it may create a partnership. Whether it is the one or the other depends upon the way in which the trustees are to conduct the affairs committed to their charge. If they act as principals and are free from the control of the certificate holders, a trust is created; but if they are subject to the control of the certificate holders, it is a partnership."

Tested by these principles the declaration in question created a trust, and we think it must be so interpreted.

But we need not discuss the refined distinctions made in those decisions, and others of the State of Massachusetts, where this subject has been particularly discussed, as upon undisputed evidence plaintiff entered into the transaction with full knowledge or notice of the character of the concern with which it was dealing, and must be held bound by the limitations imposed by its articles of association with reference to which the contract must be deemed to have been made. What was said in *Glenn v. Allison*, 58 Md. 527, seems particularly applicable to this state of facts:

"Although one may covenant as trustee, he may limit and qualify the character in which he is to be held answerable; and where it plainly appears from the face of the instrument, that he did not mean to bind himself personally, courts will construe the covenant according to the plainly expressed intention of the parties, and this too, in cases where the covenantor had no right to bind himself in a fiduciary character.

If the plaintiff be without remedy in such cases he has no one to blame but himself, in accepting a covenant of such a character. He certainly had no right to rely upon the individual liability of the covenantor.''

The same principle would apply to an oral contract, like that at bar, which discloses an intention that the parties should not be personally bound. The theory of plaintiff's suit, therefore, is not supported by the evidence, either as to the character of the company, or Condon's power to bind his associates individually or as copartners. The suit is manifestly predicated upon the individual and joint liability of defendants, and not as to their liability as trustees to the extent of the assets of the trust, and as they cannot under the terms of the trust, and the contract made specifically with reference thereto, be liable in their individual capacity, severally or jointly—whatever may be their liability to one having no notice of the character of the company—the judgment must be reversed.

The case of *Greene v. People,* 150 Ill. 513, a quo warranto where individuals were acting as a corporation, has no application to this state of facts, nor have the corporation or securities acts cited from the Session Laws of 1919 [Cahill's Ill. St. ch. 32, ¶¶ 1-158, ¶¶ 254-296.]. Defendants were not acting, or assuming to act, in a corporate capacity or purporting to issue or deal in securities.

*Reversed.*

GRIDLEY, P. J., and MORRILL, J., concur.