Review Printing and Stationery Company, Appellant,
v. William H. McCoy et al., Appellees.

Gen. No. 8,798.

Opinion filed August 24, 1934.

WELSH & WELSH, for appellant; VAIL, MILLS & ARMSTRONG, of counsel.

C. A. PEDDERSON and HALL & DUSHER, for appellees.

MR. JUSTICE DOVE delivered the opinion of the court.

The sufficiency of the allegations of an additional count to plaintiff's declaration was challenged by a general demurrer. Upon a hearing, the demurrer was sustained and plaintiff electing to stand by its additional count, the same was dismissed and from that judgment an appeal has been perfected to this court.

This additional count alleged that on August 3, 1921, a written agreement and a declaration of trust was executed by Reuben H. Donnelly, Harry M. Johnson, John H. Camlin, Mary A. McCoy, Mary M. McCoy and Walker K. Frost. This instrument is set forth *in haec verba* in the additional count, and by its provisions it appears that Mary A. McCoy, Mary M. McCoy and Walter K. Frost were referred to therein as subscribers and they appointed the other three parties to the instrument as trustees. It was provided that the trustees should be known as and use the name of McCoy Directory Company, unincorporated, and under that name and style the trustees were to transact the business as provided in said instrument. It further appears thereby that Mary A. McCoy at that time owned a certain business together with certain personal property, furniture, plats, records, accounts and bills receivable, directories and data therefor, known as the McCoy Directory Company, which was located in Rockford, Illinois; that Walter K. Frost on that date purchased a nine-fortieths interest therein and Mary M. McCoy had rendered various services to said business; that for a valuable consideration the instrument evidences that Mary A. McCoy sold and assigned to Donnelly, Johnson and Camlin all the properties and business of the McCoy Directory Company and they accepted the same and engaged to manage, carry on and control the business and distribute the profits as therein provided. Section 17 of the declaration of trust provided that no one of said trustees should be

personally liable for any of the acts of the trustees or of any one of them, and in the administration of the trust, the trustees should not be under personal obligation or liability of any kind, name or nature for any accident, mistake or want of judgment other than wilful or criminal use, misuse or abuse of said trust. Section 20 provides that "all and everyone having any relation to or transaction with, the said trustees are hereby put on notice that, except as herein limited, the said trustees or their successors in the trust, and the subscribers hereto and beneficiaries hereunder are in no way personally liable for any of the transactions of this trust. It is further provided that in all contracts and agreements entered into by the Trustees for the said trust, specific mention shall be made therein of this trust to the end that any and all parties must look solely to the trust estate and the trust funds for any claim arising under said trust." Section 24 gave the trustees power to engage in the business of publishing directories, to enter into the printing, publishing or advertising business of every nature and description, or any other business the trustees may see fit.

The additional count to the declaration then averred that the trustees accepted the obligation of managing trustees under the provisions of said agreement and declaration of trust and under the name and style of McCoy Directory Company embarked upon and thereafter continued to carry on the business of gathering data for, preparing, publishing and distributing city directories; that prior to 1929, Donnelly and Johnson died and they were succeeded by Wm. H. McCoy and C. A. Pedderson, who accepted the trust and continued with Camlin to carry on the business of the McCoy Directory Company.

The additional count then alleged that on November 24, 1920, Mary M. McCoy, then doing business under the name of McCoy Directory Company, entered

into a certain written contract with appellant which is set forth *in haec verba* under the terms of which appellant agreed to publish for Mary M. McCoy directories for Rockford and 10 other cities; that during the years 1930 and 1931, appellant, at the request of appellees and under the specifications, with noted exceptions, of the 1920 contract, furnished and printed city directories for distribution by appellees for 7 of the 11 cities mentioned in the contract of 1920.

The additional count then avers that appellees did not, in their contract with appellant or in any other contract with appellant, provide, stipulate or require that appellees were not to be personally liable to appellant for said service, work and printing, nor did appellees or any or either of them in said contract or any other contract or agreement, written or parol, provide, stipulate or require appellant to look solely to the trust estate of said common law trust for compensation or payment.

The additional count then avers that the city directories were printed and delivered to appellees according to the contract and were accepted by them; that during 1931 and 1932, $2,958.64 had been paid thereunder by appellees, leaving an agreed balance of $15,176.73 remaining due and concluding that appellees are liable therefor jointly and severally.

Appellant insists that notwithstanding the provisions of paragraph 20, which exempted appellees from personal liability, still they are not so relieved in the absence of an agreement to that effect, that appellees are trustees and as such each trustee is principal and contracted as principal and not as an agent, and is therefore personally liable to appellant. It is further insisted by appellant that there are no averments in the additional count from which it can be concluded that appellant did have notice at the time the contract sued on was made, of the provisions of the declara-

tion of trust exempting appellees from personal liability and even if it did have such notice, the law is that in order to relieve appellees of their personal liability, appellees, as trustees, must have contracted against such personal liability and the amended count expressly avers that appellees did not so contract.

Appellees insist that the averments of the additional count disclose that appellant, at the time the contract was made, when the directories were furnished and delivered and when the parties agreed upon the amount that was due appellant, it, appellant, knew that appellees were a common law trust and appellant is chargeable with knowledge of the terms and conditions of that trust and appellant having extended credit to the trust estate and its clear intention being to look to the trust estate, it cannot hold the appellees personally liable.

As sustaining their respective positions, the Illinois cases of *Hunter v. Winter,* 268 Ill. App. 487; *H. Kramer & Co. v. Cummings,* 225 Ill. App. 26, and *Uihlein v. Budd,* 252 Ill. App. 487, are cited by counsel for both parties and as particularly sustaining its contention, appellant directs our attention to *Goldwater v. Oltman,* 210 Cal. 408, 292 Pac. 624, 71 A. L. R. 871.

In *Goldwater v. Oltman, supra,* it appears that some of the causes of action were based on a promissory note executed by the Drascena Productions and the questions presented for decision were whether or not the members or shareholders of Drascena Productions were personally liable upon a note executed by the president of that organization and whether or not the five trustees of the Drascena Productions were personally liable upon the note sued on. The agreement and declaration of trust by which the Drascena Productions came into existence created a type of business organization usually referred to as a Massachusetts

or business trust. It contained the usual provisions found in such agreements and provided among other things that five trustees should have full authority and control of the business; that the title to all property should be vested in them and they should fill all vacancies on the board and elect their successors; that the subscribers were not to be personally liable for any of the obligations of the trust and the term of the existence of the organization was fixed upon lives in being so that no question of the rule against perpetuities could be involved. The holders of two-thirds of the issued certificates of trust could terminate the trust without consent of the trustees.

In speaking of an organization of this character, the court stated that they originated because of the hostilities of some States toward corporations and due to the desire of those organizing the same to secure some of the advantages that would be secured by incorporating without incurring the burdens and restrictions therefrom; that due to the statutory provisions in Massachusetts prohibiting corporations from dealing in real property, this type of organization reached its fullest development and most extensive use in that State. ''The chief advantages of such organizations,'' continues the opinion, ''from the standpoint of those desirous of combining their wealth for business purposes are, that until recently they were, in most states, free from regulation, enjoyed freedom from corporation taxation, and its members enjoyed the freedom from personal liability that is imposed upon partners. This type of organization is nothing more than an attempt to use the old common-law trust for the purpose of carrying on business enterprises. Such a trust is brought into being by a declaration of trust, by the terms of which those desiring to invest their capital agree to the creation of a governing group of trustees, the powers and duties of this board being dependent

on the terms of the trust agreement. The interest of each subscriber is evidenced by transferable certificates, similar to shares of stock in a corporation and, in this State, subject to the scrutiny of the corporation department. The organization does not dissolve as does a partnership upon the transfer of any share, nor upon the death, insanity or bankruptcy of a subscriber. The trust agreement usually provides that the trustees and not the subscribers are the owners of the property, and the trustees are given, in a true Massachusetts trust, complete control of the management of the business. In the trust agreement it is always provided that the subscribers are not personally liable for any of the acts of the trustees. . . . Generally stated, a trust of this nature is created wherever several persons transfer the legal title in property to trustees, with complete power of management in such trustees, free from the control of the creators of the trust, and the trustees in their discretion pay over the profits of the enterprise to the creators of the trust or their successors in interest. As thus defined, it is apparent that such a trust is created by the act of the parties and does not depend upon statutory law for its validity.'' The opinion then quotes from the case of *Hecht v. Malley*, 265 U. S. 144, as follows: ''The 'Massachusetts trust' is a form of business organization, common in that state, consisting essentially of an arrangement whereby property is conveyed to trustees, in accordance with the terms of an instrument of trust, to be held and managed for the benefit of such persons as may from time to time be the holders of transferable certificates issued by the trustees showing the shares into which the beneficial interest in the property is divided. . . . Under the Massachusetts decisions these trust instruments are held to create either pure trusts or partnerships, according to the way in which the trustees are to conduct the affairs committed to their

charge. If they are the principals and are free from the control of the certificate holders in the management of the property, a trust is created; but if the certificate holders are associated together in the control of the property as principals and the trustees are merely their managing agents, a partnership relation between the certificate holders is created.'' The court then stated that under the particular agreement and declaration of trust which created the Drascena Productions, the subscribers had no such degree of ultimate control that would make the organization a partnership rather than a trust, and held that no direct personal liability attached to the shareholders of the Drascena Productions simply by virtue of the fact that they were shareholders in that organization. The court then went on to pass upon the liability of the trustees themselves, stating that they had been made defendants because they were likewise shareholders and in holding them liable the court said, ''The law is clear, that in the absence of an expressed or implied agreement with the creditors to the contrary, the trustees are personally liable on all contracts with third persons. In the case of *Taylor v. Davis*, 110 U. S. 330, the rule is thus stated: 'A trustee is not an agent. An agent represents and acts for his principal. . . . When an agent contracts in the name of his principal, the principal contracts, and is bound, but the agent is not. When a trustee contracts as such, unless he is bound, no one is bound, for he has no principal. The trust estate cannot promise; the contract is therefore the personal undertaking of the trustee. . . . He is personally bound by the contracts he makes as trustee, even when designating himself as such. . . . If a trustee contracting for the benefit of the trust wants to protect himself from individual liability on the contract, he must stipulate that he is not to be personally responsible, but that the other party is to look solely

to the trust estate.' (See also, *Hewitt v. Phelps,* 105 U. S. 393; *Betts v. Hackathorn,* 159 Ark. 621; *Frost v. Thompson, supra;* 9 Fletcher on Corporations, sec. 6095; 8 Thompson on Corporations, 3d ed., sec. 6746.) This broad personal liability of the trustees may be limited by provisions to that effect in the declaration of trust, if known and agreed to by all the parties affected. (*Frost v. Thompson, supra; Wells-Stone Merc. Co. v. Grover,* 7 N. D. 460; *Taylor v. Davis, supra.*) In the trust agreement under consideration, the following provision is found relating to the liability of the trustees: '. . . all contracts . . . shall be the obligation of the trustees, and in every written order, contract or obligation made by the trustees, it shall be their duty to stipulate therein that neither the trustees nor the *cestuis que trust* shall be held to any personal liability under or by reason of such order, contract or liability, and that all persons having dealings with the trustees shall look only to the property of this trust for payment.' In the first place, even if plaintiff knew of this clause in the trust agreement, it does not appear therefrom that in any contract where the trustees have not stipulated against personal liability, mere knowledge of the above clause would release the trustees from the ordinary and usual personal liability. As we interpret that clause, the creators of the trust have conferred on the trustees the power of releasing themselves from personal liability, but, in order to enjoy that privilege, they must stipulate to that effect in every contract with a third person. That privilege is a limitation of the general rule of liability, and is a limitation on the rights of the creditors of the trust. That being so, the limitation will not be enforced in the absence of a clear understanding and knowledge on the part of the creditors to the effect that no such liability is to exist. In the second place, there is nothing in the record of this case to show that plaintiff's assignor

had knowledge of that clause at the time the promissory note was executed. It was, therefore, error to grant a nonsuit in favor of the five trustees, for, on the record before us, they are clearly liable for the amount set forth in the note.''

*Hunter v. Winter, supra,* was an action brought against six persons who were associated under a declaration of trust and who conducted their business under the name of Dr. Winter Chemical Company. In holding that the individual trustees were liable for the obligations incurred by the trust, the court said: ''Defendants seek to take refuge behind the provisions of the declaration of trust limiting liability, and assert that plaintiff's claim is either against Dr. Winter personally or against the funds of the trust. We are of the opinion that the rule in this State with reference to such trusts is that while the courts will, so far as possible, give effect to the provisions of the declaration of trust among the members themselves, when they themselves are the only ones interested, and as to third parties who have full knowledge of the character of the trust with which they are dealing, yet where third parties deal with the trust without knowledge of the provisions of the trust agreement, especially those affecting liability, such association must be considered as a partnership.''

*H. Kramer & Co. v. Cummings, supra,* was an action in which the plaintiff sought to hold the defendants individually liable for goods sold and delivered to the Roman Metals Company. It appeared that the defendants had entered into a declaration of trust and conducted a business under this name. In reversing the judgment of the trial court, which held the defendants individually liable, the court, after referring to the cases of *Williams v. City of Waltham,* 215 Mass. 1, and *Frost v. Thompson,* 219 Mass. 360, said: ''But we need not discuss the refined distinctions made in those

decisions, and others of the State of Massachusetts, where this subject has been particularly discussed, as upon undisputed evidence plaintiff entered into the transaction with full knowledge or notice of the character of the concern with which it was dealing, and must be held bound by the limitations imposed by its articles of association with reference to which the contract must be deemed to have been made.''

In *Uihlein v. Budd, supra,* it was sought to hold Budd personally liable for the payment of notes signed ''The Vincent Trust, by C. R. Vincent, Pres.'' but the court held that the allegations of facts in the declaration would not justify the conclusion that Budd was personally liable, inasmuch as the declaration failed to allege that Vincent in executing the notes was the agent of Budd, nor was it averred that Vincent had authority to execute the notes in the name of his cotrustees. In its opinion that court said: ''It is of course true that a trustee who enters into a contract with third persons is himself personally liable unless the agreement expressly provides that the person with whom he contracts shall look to the funds of the estate exclusively. *Austin v. Parker,* 317 Ill. 348. Unless such limiting language appears in the contract, the word 'trustee' is held to be only *descriptio personae,* but there is no averment here that the defendant Budd signed any agreement. He cannot be held liable solely by reason of the fact that Vincent executed these notes (if such be the case) in a way that would impose a personal liability upon himself. The declaration fails to aver facts showing an intention to create a personal liability of defendant and he was not liable.''

It is stated by counsel for both sides that the trial court concluded from the allegations of the additional count that appellant had full notice or knowledge of the terms of the trust agreement, particularly paragraph 20 thereof, and that under the foregoing Illinois

authorities, appellees were not personally liable under the contract sued on, and that it was not necessary for appellees to stipulate in their contracts with appellant against personal liability. It is true that the additional count sets out *in haec verba* the trust agreement and the allegations of the additional count disclose that appellant did carry this account in the name of McCoy Directory Company, forwarded itemized statements and invoices to the McCoy Directory Company, that its written proposal to do certain work on November 20, 1920, was addressed to and accepted by McCoy Directory Company, that the written but unsigned memorandum effective January 1, 1931, refers to the McCoy Directory Company and that the completed directories were delivered to the McCoy Directory Company, but from these allegations it does not follow that appellant had knowledge or notice of the terms or conditions of the trust agreement at the time the contract, which forms the basis of this suit, was entered into. Whether appellant knew or did not know of the trust agreement or its provisions does not appear from the allegations of the additional count. What this additional count avers is that the contract sued on was made by appellant with appellees, under the name and style of McCoy Directory Company; that the directories were printed and furnished by appellant to appellees under the name of McCoy Directory Company, and under the provisions of that contract; that itemized invoices were furnished by appellant to appellees under the style of McCoy Directory Company and that thereafter appellees agreed, under the style of McCoy Directory Company, with appellant, that the sum of $18,135.37 was the true and correct amount due. Appellees, under these allegations, were the McCoy Directory Company, *Betts v. Hackathorn,* 159 Ark. 621, 252 S. W. 602, 31 A. L. R. 847, and annotation following beginning on page 851, and in order to

state a cause of action against them, it was not necessary, in our opinion, for appellant to expressly negative knowledge of the terms of the trust agreement at the time the contract sued on was entered into.

If, however, as counsel for appellees contend, a reasonable interpretation of the averments of the additional count leads to the conclusion that appellant knew he was dealing with a common law trust and was chargeable with knowledge and notice of its terms and conditions, then in addition to that portion of paragraph 20, which provides that every one, having any transactions with appellees, is put on notice that appellees, as well as the beneficiaries, are in no way personally liable for any transaction, appellant was also chargeable with the further proviso therein contained to the effect "that in all contracts and agreements entered into by the trustees for the said trust, specific mention shall be made therein of this trust, to the end that any and all parties must look solely to the trust estate and the trust funds for any claim arising under said trust." In *Goldwater v. Oltman, supra,* a somewhat similar clause was interpreted to mean that the creators of the trust conferred on the trustees the power of releasing themselves from personal liability, but-in order to enjoy that privilege the trustees must stipulate to that effect in every contract with a third person. Such a clause granted to appellees a privilege of limiting their liability, but the express allegations of the additional count are that in the contract sued on, appellees did not avail themselves of this privilege. In 65 C. J. 1104, it is said: "The trustees of a business trust, having substantial control of the property and business of the trust and who consequently have the status of principals, as in the case of trustees generally, are personally responsible for any obligations growing out of transactions in relation to the business of the trust, unless they have specifically contracted

in the incurring of the debt that the trust estate alone shall be held responsible therefor, and this is so, even though the trust instrument expressly declares them exempt from personal liability. . . . Although trustees may stipulate against personal liability on indebtedness incurred in the conduct of the business of the trust, mere knowledge on the part of the creditor that the trustees are acting only as such, or mere knowledge on the part of a creditor of the existence of a provision in the declaration empowering the trustees so to limit their liability, or of a provision therein which attempts thereby to effect such limitation, is not enough actually to relieve the trustees from such personal liability. . . . The creditor must have a clear understanding in entering into a contract with the trust that he is limiting his right to recover to the property of the trust."

In *Schumann-Heink v. Folsom,* 328 Ill. 321, 159 N. E. 250, 58 A. L. R. 485, the complainant sought to hold the defendants, trustees under a somewhat similar declaration of trust, individually liable by virtue of a contract entered into between the complainant and the trustees, the declaration of trust reciting that the trustees in their collective capacity shall be designated "Goodland Company" and under such name should manage and administer the trust estate. The chancellor entered a money decree against two of the defendants as trustees payable only out of the trust property and dismissed the bill for want of equity as to the defendants in their individual capacity and as copartners. The contract which formed the basis of the litigation expressly provided: "This obligation is executed in behalf of the trustees under the declaration of trust made and delivered at Boston, Massachusetts, and deposited with the Massachusetts Trust Company, not individually but as such trustees, to bind the trust estate." In affirming the judgment of the Appellate

Court which affirmed the decree of the lower court, it was held that the declaration of trust involved in that case was not contrary to the public policy of this State, that, inasmuch as the declaration of trust gave the trustees full control in the management of the business of the trust and the certificate holders not having any control over the business, they were not liable as partners. "This being true," continues the opinion, "the trustees had no authority to bind the *cestuis que trust,* because a trustee is not an agent. When a trustee contracts, he does so for himself. He has no principal. The contract is the personal undertaking of the trustee, and if he wants to protect himself from individual liability on the contract, he must stipulate that he is not to be personally responsible and that the other party is to look solely to the trust estate. *Taylor v. Mayo,* 110 U. S. 330; *Austin v. Parker,* 317 Ill. 348; *Bradner Smith & Co. v. Williams,* 178 Ill. 420. In the case at bar, the trustees did limit their liability by specifically stating that the contract was executed 'not individually but as such trustees to bind the trust estate.' Under the authorities this was sufficient."

We are of the opinion that the trial court erred in sustaining the demurrer to this additional count and its judgment is reversed, and the cause remanded with directions to overrule the demurrer.

*Reversed and remanded with directions.*