Virginia Kaufman Levy, Appellant, v. F. E. Nellis et al., Appellees.

Gen. No. 38,713.

Opinion filed March 23, 1936.

ARNOLD SEEDER, of Chicago, for appellant.

PRITZKER & PRITZKER, of Chicago, for appellees; RICHARD WEINBERGER, of Chicago, of counsel.

Mr. Presiding Justice McSurely delivered the opinion of the court.

April 10, 1926, defendants entered into a trust agreement purporting to create the South Water Market Improvement Association. This appeal presents the question whether this created a valid common law trust or a partnership. The trial court held for the common law trust, and plaintiff appeals.

Plaintiff filed her complaint in chancery against F. E. Nellis, C. R. Godding, J. W. Shafton and Harry Snyder, as trustees of the South Water Market Improvement Association, and also against certain other named defendants, who were subscribers to the trust agreement. The plaintiff sought recovery upon three promissory notes on which there was an unpaid balance of $12,950; they were signed "Harry Snyder, F. E. Nellis, J. W. Shafton, C. R. Godding—As trustees under an instrument dated at Chicago, Illinois, April 10, 1926, creating the South Water Market Improvement Association, and not individually." Edmund Kaufman, the payee in the notes, died and plaintiff received them as part of her distributive share of his estate.

Plaintiff asked for judgment against the makers of the notes as partners, that the trustees be directed to call upon those subscribers who have failed to pay their subscriptions in full for the payment of the balance of their subscriptions; that a receiver be appointed to take over the assets of the trust. Plaintiff asked the court to hold that the trust agreement did not create a valid common law trust but created a partnership, and asked for judgment against all of the defendants for the amount due.

Defendants filed motions to dismiss the complaint, asserting among other things that the agreement did not create a partnership but did create a common law trust. The trial court held with defendants on this

point and dismissed the complaint as to the defendants making the motion. Plaintiff appeals from this order.

The trust agreement is too lengthy to be quoted in full in this opinion. It recites that the South Water Market District, Chicago, Illinois, has been organized by a large number of commission merchants with businesses in the district, and that the subscribers to the agreement are interested in promoting the success of the district and generally in developing it, and for these purposes the subscribers covenanted and agreed to and with each other that certain parties appointed as trustees shall attempt to collect all moneys subscribed under the agreement and that all such moneys and all other property held by the trustees shall become a part of this trust, to be held by the trustees as joint tenants.

It was further provided that the trustees shall have full power and authority (a) to purchase, sell, exchange or lease any of the building units located in the district; (b) to purchase, sell or exchange, or perform any contracts with reference to the acquisition or disposition of any of said units; (c) to loan any and all moneys belonging to the trustees in furtherance of the purposes of the trust; (d) to borrow any moneys for the same purposes; (e) to dispose of any businesses located in the district; (f) to alter or operate any of the units in the district; (g) to mortgage any real or personal property; (h) to exchange, lease or mortgage, or dispose of any rights in any property or businesses in the discretion of the trustees; (i) to have all powers and authority requisite or helpful in generally promoting the development of the district and the businesses therein conducted, and to have the same power and authority in connection with any property in the hands of the trustees as they would have if they were the joint owners of the property free and clear of this trust.

Neither the trustees nor any of the beneficiaries shall be personally liable for any moneys borrowed or for any other liabilities incurred or assumed by the trustees or beneficiaries unless they shall have expressly undertaken to become so liable, and all persons dealing with the trustees shall look only to the property of the trust for the payment of their claims. It was provided that every instrument to which the trustees should be parties on account of which any liability may be created against the trustees shall substantially express this provision. The trustees were empowered to rent offices and hire help, also to settle and compound any claims made against the trustees; the trustees were to be paid no salary for their services as trustees. There was quite a detailed provision as to the manner in which the trustees should handle the finances of the trust; it provided that the beneficiaries in the trust shall have no rights ''of possession, management or control of the trust estate'' nor any property rights in any of the property forming part of the trust estate; the rights of the beneficiaries should be solely against and through the trustees, who shall be the absolute representatives of all subscribers or beneficiaries. There were provisions for meetings of the trustees, who may make such by-laws and other rules as they may deem proper.

There was a provision for meetings of the subscribers or beneficiaries, to be held on the third Monday of February in each year; special meetings might be called upon three days' written notice. There seems to be no provision as to what the beneficiaries might do at these meetings.

The trustees should hold office for a period of five years from the date of their appointment, but during the period of any vacancy in the office of trustee a majority of the remaining trustees may take any action

authorized, and any such vacancy may be filled for the unexpired term by a majority vote of the remaining trustees; any vacancy in the office of trustee by reason of the expiration of the terms of such trustee shall be filled by appointment by a majority in amount of the holders of the beneficial certificates. The trust terminated March 1, 1942. The terms of the trust agreement might be amended by vote of two-thirds in amount of the holders of the certificates of beneficial interest and such amendment shall be binding upon the beneficiaries and upon the trustees, and also upon third parties whose rights accrue after such amendment.

In the opinion in *Schumann-Heink v. Folsom,* 328 Ill. 321, is a comprehensive discussion of common law trusts and their differences from a partnership. The opinion notes that a partnership is a contract of mutual agency, each partner acting as a principal in his own behalf and as agent for his co-partner; that where under the declaration of trust the unit holders retain control over the trustees and have authority to control the management of the business the partnership relation exists. On the other hand, where the declaration of trust gives the trustees full control in the management of the business of the trust and the certificate holders are not associated in carrying on the business and have no control over the trustees, then there is no partnership.

Many decisions are cited in which the courts have attempted to determine what degree of control remaining in the beneficiaries or certificate holders rendered the organization a partnership. Among these cases are *Frost v. Thompson,* 219 Mass. 360; *Neville v. Gifford,* 242 Mass. 124; *Whitman v. Porter,* 107 Mass. 522; *Liquid Carbonic Co. v. Sullivan,* 103 Okla. 78, 229 Pac. 561; *Haskell v. Patterson,* 165 Ark. 65; *Dana v. Treasurer & Receiver General,* 227 Mass. 562; *Priestley v.*

*Treasurer & Receiver General,* 230 Mass. 452; *Nini v. Cravens & Cage Co.* (Tex. Civ. App.), 253 S. W. 582; *Simson v. Klipstein,* 262 Fed. 823; and *Morehead v. Greenville Exch. Nat. Bank* (Tex. Civ. App.), 243 S. W. 546. These and other cases hold that where the trustees have full and exclusive control of the management of the business of the trust and the certificate holders have no control of the trustees, it is a valid trust and there is no liability as partners.

In the present case it hardly needs argument to show that the trustees had exclusive power to control the business. The trust agreement goes into great detail, covering all phases of the management of the business of the trust, and gives the trustees full power and authority to conduct such business as the trustees would have if they were joint owners of the property free and clear of the trust. This is emphasized in the provision that "The rights of all beneficiaries hereunder shall be subject to all of the terms and provisions hereof and all beneficiaries shall be bound hereby. The beneficiaries shall have no rights of possession, management or control of the trust estate, nor any property right in any of the real or other property forming part of the trust estate. . . . ''

The only debatable question is whether, by the terms of the agreement, the beneficiaries had control of the trustees. Plaintiff says this control is given by the provisions that the holders of the beneficial certificates shall fill vacancies in the office of trustee when the terms of such trustees have expired, that meetings of the beneficiaries shall be held on the third Monday of February in each year, that special meetings may be called upon three days' written notice, and that the terms of the trust agreement may be amended by vote of two-thirds in amount of the holders of the certificates. It should be noted that the trustees were elected

for terms of five years and could not be removed during this time; that if there was a vacancy the remaining trustees had the sole right, for a period of 10 days, to fill vacancies.

*Hart v. Seymour*, 147 Ill. 598, involved the title to real estate held under a trust agreement which it was sought to set aside in the litigation. To this end was invoked a provision in the trust agreement that the shareholders were empowered to remove a trustee, and in case of a vacancy to appoint a successor in trust, and a majority of the shareholders were empowered, at a regular meeting, to direct and control the action of the trustees. None of these powers had been exercised, and it was held that the mere existence of these reserved powers, not called into exercise, could not divest the trustees of the title to the real estate. In *Goldwater v. Oltman*, 210 Cal. 408, the trust agreement provided that two-thirds of the shareholders could terminate the trust without the consent of the trustees, that the trustees could not make a mortgage without the consent of two-thirds of the shareholders, and that the trust agreement could not be amended without the consent of two-thirds of the shareholders. As the question of the classification of such agreements apparently arose for the first time in California the court gave an exhaustive study to the matter, citing many cases, especially those of Massachusetts, which was recognized as the home State of this type of trust. It was held that the powers reserved to the shareholders fell short of making the trustees their mere agents, and that the limitations on the powers of the trustees leave the trustees the masters and did not confer upon the subscribers that degree of ultimate control that made the organization a partnership rather than a trust. The opinion in the California case was discussed at some length in *Review Printing & Stationery*

*Co. v. McCoy*, 276 Ill. App. 580, where the agreement was held to create a valid trust, relieving the trustees of personal liability. In *Cox v. Hickman*, 8 H. L. Cas. (Eng.) 267, it was held that the power in the beneficiaries to hold meetings, to make rules for the conduct of the business by the trustees or to terminate the business altogether by a majority vote, was not a sufficient control by the beneficiaries to make the organization a partnership rather than a trust. *Krey Packing Co. v. Hitchings* (Mo. App.), 18 S. W. (2d) 123, held that a trust agreement giving the shareholders power to appoint an advisory committee which directed the trustees was a valid trust. *Rice v. Rockefeller*, 134 N. Y. 174, held that power given the shareholders to elect successor-trustees was a valid trust. In *Reichert v. Missouri & Illinois Coal Co.*, 231 Ill. 238, it was said that one who creates a trust has a right to create a method of filling vacancies and for appointing successors in trust. *Rhode Island Hospital Trust Co. v. Copeland*, 39 R. I. 193, involved a trust agreement substantially like that under consideration. There the shareholders had power to hold meetings, appoint trustees, amend the trust by a two-thirds vote and terminate the trust. It was held that the agreement created a valid trust and not a partnership. These and other cases which might be cited support the conclusion that the trust agreement in the instant case created a valid common law trust and not a partnership. The control of the trustees by the shareholders, referred to as creating a partnership, means control of the trustees in the management of the business of the organization and not the control of the personnel of the trustees without which no trust agreement could ever be made.

Some of the cases cited seem to emphasize the fact that none of the powers reserved to the beneficiaries

in the trust agreement was exercised, and that is true in the instant case. In Wrightington on Unincorporated Associations and Business Trusts (2d Ed.) at page 68 the author says:

"The power to amend the declaration of trust has been emphasized as proving the existence of the power to control and, therefore, of partnership. If the instrument would otherwise be deemed to create a trust it cannot be that the mere power to change the instrument makes it, before such change, a partnership. The right to change a trust into a partnership presupposes that until that change it remains a trust. This common provision in the instruments we are considering would, therefore, seem to be of no value in determining their true classification."

We do not believe it can be logically argued, where the trustees have exclusive and full control of every detail of a business, that merely the power under certain circumstances to fill vacancies among the trustees or to elect trustees at stated intervals, or even to alter or amend the trust agreement, turns the trust into a partnership, contrary to the intent of the parties.

An additional reason for sustaining the judgment of the trial court is found in paragraph 3 of the trust agreement, which provides as follows:

"Neither the trustees nor any beneficiary, herein referred to, shall be personally liable for any moneys so borrowed or for any other liabilities incurred . . . unless they shall have expressly undertaken to become so liable and all persons dealing in any manner with the trustees shall look only to the property of the trust, for the time being, for the payment of their claims."

It will be remembered that the four trustees signing the notes which are the basis of this suit, signed "As trustees under an instrument dated at Chicago, Illinois, April 10, 1926, creating the South Water Market

Improvement Association, and not individually." In *Bank of Topeka v. Eaton,* 100 Fed. 8, affirmed 107 Fed. 1003, the note was signed, "as Trustee as Aforesaid." It was held that such a note refers to the declaration of trust and the payee is bound by its provision that the trustee is not personally liable. In *Bradner Smith & Co. v. Williams,* 178 Ill. 420, it was held that an express provision showing that the parties agreed to act upon the responsibility of the funds alone relieved the trustee from personal liability. To the same effect is *H. Kramer & Co. v. Cummings,* 225 Ill. App. 26, in which the opinion quoted from *Glenn v. Allison,* 58 Md. 527, where it was held that where it plainly appeared from the face of the instrument that the trustee did not mean to bind himself personally there was no individual liability. This is applicable to the instant case.

For the reasons indicated we hold that the judgment of the trial court is proper, and it is affirmed.

*Affirmed.*

MATCHETT and O'CONNOR, JJ., concur.