Review Printing and Stationery Company, Appellant
v. William H. McCoy, et al., Appellees.

Gen. No. 9,158.

October term, 1936. Heard in this court at the Opinion filed September 28, 1937.

WELSH & WELSH, of Rockford, and VAIL, MILLS & ARMSTRONG, of Decatur, for appellant.

C. A. PEDDERSON, of Rockford, *pro se,* and appellee William H. McCoy. HALL & DUSHER, of Rockford, for appellee John H. Camlin.

Mr. Justice Dove delivered the opinion of the court.

On March 28, 1933, appellant instituted this action of assumpsit in the circuit court of Winnebago county, to recover upon seven trade acceptances. The declaration alleged that the instruments sued on were drawn by the plaintiff in November, 1930, February, March, June, and October, 1931 for various amounts aggregating $18,135.37, and thereafter, upon sight, the defendants, styling themselves McCoy Directory Company, through their duly authorized agent, accepted said bills and thereby became liable to pay to the plaintiff the respective amounts according to the tenor and effect of the said acceptances. In addition to this special count, a separate paragraph of which declared upon each of the seven trade acceptances, the declaration contained the consolidated common counts. Attached to the declaration were copies of the seven trade acceptances together with an affidavit of claim to the effect that the amount then due the plaintiff, after allowing all just credits, was $16,500. The defendants each filed the general issue and three special pleas by which they denied joint liability and set up the statute of frauds and the five-year statute of limitations. These defendants also each filed a fourth special plea in which it was alleged that the McCoy Directory Company was a common law trust, that the plaintiff knew it was, that there was a provision in the trust agreement which stipulated that the trustees would not be liable personally for any obligations named in said trust, of which provision plaintiff had knowledge, and that so knowing plaintiff had its dealings with the McCoy Directory Company and no personal dealings with the defendants. In addition to these pleas, the defendants, Pedderson and McCoy, each filed a plea denying that he ever became a trustee under the trust agent of the McCoy Directory Company, a trust. To these pleas replications were filed and issue joined.

On December 21, 1933, by leave of court, plaintiff filed an additional count to the declaration. This count set out in *haec verba* a trust agreement, dated August 3, 1921, creating the McCoy Directory Company, and alleged that the defendant Camlin and the other trustees named therein, Reuben H. Donnelly and Harry M. Johnson, accepted the trusts thereby imposed and thereafter carried on the business of the company in the name of McCoy Directory Company until the death of Donnelly and Johnson, which occurred prior to 1929, that the defendants McCoy and Pedderson were appointed managing trustees to fill the vacancies caused by the deaths of Donnelly and Johnson, and that they and Camlin throughout the years 1929, 1930, 1931 and 1932 conducted the business of the trust under the name of McCoy Directory Company: That at the request of the defendants, the plaintiff, in 1930 and 1931, printed various city directories: That the specifications and prices for printing the same were originally agreed upon prior to the formation of the trust and later modified in accordance with an unsigned memorandum set forth in this count. In this additional count it was further alleged that in said contract with the plaintiff the defendants did not stipulate or require that they should not be personally liable to the plaintiff or that the plaintiff was to look solely to the trust for compensation, and that the plaintiff did not agree or stipulate with the defendants not to hold them personally liable or to look to the trust estate for compensation. Copies of invoices rendered defendants by the plaintiff and a statement of the account sued on were attached to this additional count. On February 17, 1934 the trial court sustained a demurrer to this additional count and entered an order dismissing said additional count. From that order an appeal was prosecuted to this court and this court reversed the order of the trial court and remanded the cause with directions to overrule the de-

murrer. *Review Printing & Stationery Co. v. McCoy,*
276 Ill. App. 580.

Upon the cause being redocketed in the trial court,
the demurrer to the additional count was overruled and
the defendant Camlin filed three more pleas and a coun-
terclaim. By an order thereafter entered these pleas
and counterclaim were adopted as the pleas and coun-
terclaim of the other defendants. The first plea was
verified and to the effect that the defendant did not
promise in manner and form as the plaintiff complained
against him. The second plea was the five-year statute
of limitations, and the third, a plea of the statute of
frauds. Replications to these pleas were thereafter
filed. By the counterclaim it was averred that if the
defendant was personally liable to the plaintiff that
then the McCoy Directory Company overpaid the plain-
tiff in the sum of $3,000 and that the plaintiff there-
fore owes the defendant and the other trustees said
sum. The plaintiff then, by leave of court, withdrew
its replications to the fourth special plea of the de-
fendants which had been filed prior to the first appeal,
and filed a demurrer to this special plea. The defend-
ants confessed this demurrer and took leave to file
amended special pleas within 20 days. Amended spe-
cial pleas were not filed in accordance with this leave,
but on April 13, 1935 it was stipulated that the plead-
ings and proceedings thereafter should be had under
the Civil Practice Act. On April 24, 1935 the defend-
ants filed their answer which made, as a part thereof,
the pleas theretofore filed by them. By this answer
they admitted the execution of the trust agreement
dated August 3, 1921 but denied that either the original
trustees or the defendants embarked upon and there-
after continued to carry on the business of the McCoy
Directory Company, denied the various allegations of
the additional count relative to the plaintiff furnishing
materials and printing and the delivery of the city di-

rectories for distribution by the defendants as stated in said additional count and denied that they or anyone authorized by them had contracted for such directories, denied receiving and accepting the same, denied individual and joint liability and alleged that at the time of the formation of the trust the plaintiff was advised and informed of the said trust and all provisions of the trust instrument, that it was understood and agreed that the plaintiff would deal with said trust and would look solely to the trust property for reimbursement for any dealings it had with the trust and would not hold or attempt to hold the trustees in said trust personally liable and concluded that by reason thereof the plaintiff is estopped to attempt to hold the defendants personally liable in this proceeding for said debt. On June 18, 1935 the defendants, McCoy and Pedderson, filed by leave of court, an additional answer in which they averred that all of the several supposed promises in the declaration mentioned and in the trust agreement set forth were not to be performed within one year of the making thereof and were not in writing signed by either of these defendants as required by the statute of frauds. On June 26, 1935 plaintiff filed an answer to the counterclaim denying that it was indebted to the defendants in any amount and averring that none of the defendants had any legal or just counterclaim or set-off against the amount claimed to be due the plaintiff. With the pleadings in this condition, the cause came on for trial before the court and jury. At the conclusion of the evidence on the part of the plaintiff, the trial court directed a verdict for the defendants, upon which judgment was rendered and the plaintiff has again appealed.

Counsel for appellees insist that appellant by appealing from the order of the trial court sustaining a demurrer to the additional count waived any other counts of its declaration and that after this cause was re-

docketed and the trial court overruled the demurrer to the additional count in obedience to the mandate of this court, that then the only pleading of the plaintiff before the court was the additional count. We do not think so. The judgment from which appellant prosecuted its former appeal was not a final judgment. *Chicago Portrait Co. v. Chicago Crayon Co.*, 217 Ill. 200. We did not discover that it was not a final judgment and counsel for neither party called our attention to the true condition of the record. At the time the trial court sustained the demurrer to the additional count the special count declaring upon the seven trade acceptances, the common counts and the issues made by the pleas thereto were undisposed of. Notwithstanding the fact that appellees made no motion to dismiss the former appeal, but entered their several appearances, filed briefs and participated in the oral argument, this court had no jurisdiction to consider the appeal and should have dismissed it as of its own motion at the costs of the appellant. *Chicago Portrait Co. v. Chicago Crayon Co., supra.*

After the cause was reinstated in the trial court after our former decision, counsel for both parties recognized the true condition of the record. Counsel for the plaintiff asked and obtained leave to withdraw its replication to the fourth special plea of the defendants to the original declaration and filed a demurrer to said pleas. Counsel for defendants confessed said demurrer and took leave to file amended special pleas within 20 days thereafter. The original declaration, which consisted of a special count and the common counts together with the pleas and replications thereto, was a part of the record after the cause was redocketed, and was so treated by counsel and the trial court and the cause went to trial upon the issues made by the allegations of the special count upon the trade accept-

ances, the common counts, the verified general issues, the allegations of the special pleas, replications and the answer of the defendant filed April 15, 1935.

The additional count averred and the answer admitted the execution of a written agreement and declaration of trust by Reuben H. Donnelly, Harry M. Johnson, John H. Camlin, Mary A. McCoy, Mary M. McCoy and Walter K. Frost on August 3, 1921. This instrument was offered and admitted in evidence and by its provisions Mary A. McCoy, Mary M. McCoy and Walter K. Frost were referred to as subscribers and they appointed Donnelly, Johnson and Camlin trustees. It was provided that the trustees should be known as and use the name of McCoy Directory Company, unincorporated, and under that name and style the trustees were to transact the business as provided in said instrument. This declaration of trust recited that Mary A. McCoy at that time owned a certain business together with certain personal property, furniture, plats, records, accounts, bills receivable, directories and data therefor, known as the McCoy Directory Company located at Rockford, Illinois; that Walter K. Frost on that day purchased a nine-fortieths interest therein and Mary M. McCoy had rendered various services to said business; that for a valuable consideration the instrument evidences that Mary A. McCoy sold to Donnelly, Johnson and Camlin all the properties and business of the McCoy Directory Company and they accepted the same and engaged to manage, carry on and control the business and distribute the profits as therein provided. Section 17 of the trust agreement provides that no one of said trustees should be personally liable for any of the acts of the trustees or of any one of them, and in the administration of the trust, the trustees should not be under personal obligation or liability of any kind, for any accident, mistake or want

of judgment other than wilful misuse or abuse of said trust. Section 19 provides that the death of any trustee shall not limit or affect the continuing of the trust and should a vacancy occur in said trusteeship then the remaining trustee or trustees should have the power to fill such vacancy. Section 20 provides that every one having any transaction with the trustees are put on notice that the trustees or their successors in the trust and the subscribers hereto and beneficiaries therein are in no way personally liable for any of the transactions of the trust. "It is further provided that in all contracts and agreements entered into by the trustees for the said trust, specific mention shall be made therein of this trust, to the end that any and all parties must look solely to the trust estate and the trust funds for any claim arising under said trust." Section 22 provided that in June, 1923 and every two years thereafter the trustees should call a meeting of all the holders of the beneficial interests therein and at such meetings the holders of four-fifths of the beneficial interests of the trust may, by vote, require the resignation of any trustee and may elect another trustee in his place. The instrument further recited how the profits should be divided and to whom they should be distributed after the death of Mary A. McCoy, the creator of the trust and provided that the trust should continue during the life of the last survivor of the persons named therein and 20 years thereafter, at which time the trustees should close up the business, and make distribution of the proceeds thereof as therein provided.

Walter K. Frost testified that he was a son-in-law of Mary A. McCoy, that the business of the McCoy Directory Company was the compiling and publishing of city directories, that he was one of the parties who executed the trust agreement on August 3, 1921 and that after the execution of the instrument he put in the

business $9,000 and received therefor a nine-fortieth interest therein, and has been connected with the operation of the business since that time.

Mr. Frost further testified that trustees Johnson and Donnelly both died in 1928 and that for some time following their deaths, Camlin acted as sole trustee. That in April, 1929, Frost received through the mail from Camlin an instrument executed by Camlin on April 26, 1929 which evidenced the appointment by Camlin, as surviving trustee, of defendant McCoy to succeed Harry M. Johnson, deceased and defendant Pedderson to succeed Reuben H. Donnelly, deceased. Thereafter Camlin, McCoy and Pedderson were present at a meeting held in March, 1931, at which time a loan then held by the Peoples Bank and Trust Company of Rockford, evidenced by notes of the McCoy Directory Company, was discussed. Frost testified that he stated to the trustees that he had had a request from the bank for something to show his authority to act for the McCoy Directory Company, that the attorney for the bank had requested that a resolution which the attorney for the bank had prepared be passed by the trustees and appear upon the records of the trustees, and that a copy be given the bank. That such a resolution was passed by the trustees and he, Frost, made a record of it and lodged a copy thereof with the bank. This resolution in part is as follows:

"BE IT HEREBY RESOLVED that the McCoy Directory Company and the Trustees thereof, do hereby and by this resolution ratify all of the acts and doings of W. K. Frost heretofore done by him in the past in the purchase of materials and supplies for this company and the payments of said accounts either by cash, check, notes or trade acceptances and do further approve, ratify and confirm all loans made by him for said company at the Peoples Bank and Trust Company of Rock-

ford, Illinois; and that IT IS FURTHER HEREBY RESOLVED that W. K. Frost from and after this date and until further action of this company be and he is hereby authorized to buy and purchase any and all labor, supplies and material of every kind necessary to the operation of the business of the company on' such terms as he may see fit, and from the funds of said company to pay therefor, or to give the company's check, note or trade acceptance executed by him.''

This witness Frost further testified that in 1930 and 1931 he had charge of the office of the McCoy Directory Company and that he dealt with appellant in connection with the printing by appellant of the Rockford Directory. That thereafter appellant sent the McCoy Directory Company a statement for the amount due it for its work and materials; that Frost checked the statement and found it correct and offered a trade acceptance in payment thereof. On November 22, 1930 appellant drew such a bill of exchange for $5,649.30, the amount due it, and the McCoy Directory Company by Frost duly accepted the same on December 30, 1930. The evidence is that the six other acceptances sued on were drawn by appellant and represented the amounts due appellant for printing directories for the McCoy Directory Company for six other cities and the same procedure was followed in each instance.

The original journal of the McCoy Directory Company covering the year 1921 and subsequent years was produced on the trial. The closing entries for 1921 and the opening entries for 1922 were made by a public accountant and the following appears therein: ''Note: On January 1, 1922 in' accordance with a certain instrument executed, the McCoy Directory Company up to and including December 31, 1921 having been owned solely by Mrs. M. A. McCoy of Rockford, Illinois was

converted into a so-called 'Massachusetts Trust' with the following participants:

| | | |
|---|---|---|
| Mrs. M. A. McCoy | 81/160ths | 20,250 |
| Miss M. M. McCoy | 27/160ths | 6,750 |
| Mr. W. K. Frost | 36/160ths | 9,000 |
| Mr. L. H. Secor | 8/160ths | 2,000 |
| Mr. Ed Merchant | 8/160ths | 2,000 |
| Total | | 40,000 |

Trustees:
John H. Camlin, Rockford, Illinois
Harry M. Johnson, Rockford, Illinois
Reuben H. Donnelly, Chicago, Illinois."

It further appears from the evidence that annual audits of the business were thereafter made and copies thereof were furnished the beneficiaries of the trust and also the trustees. In March, 1931, following the audit of a public accountant for the year 1930, the trustees met, examined the audit and decided upon the policies to be pursued thereafter in the business. This audit disclosed that the amount due appellant on December 21, 1930 was $14,772.64 and further disclosed that there was an outstanding note to the Peoples Bank and Trust Company for $5,850.

The evidence is further that the books and records of the company were kept in the office of the company in Rockford, that Frost had active charge of the business and was a beneficiary under the trust agreement. That in February, 1932 most of the compilation of a directory for Cedar Rapids, Iowa, had been done and was ready for the printer but appellant refused to do the printing except for cash. Thereupon the trustees assigned to Frost their interests in the Cedar Rapids Directory subject to the claim of the People's Savings Bank which held certain assignments as security for

money it had loaned the Directory Company. The agreement and the assignment executed by appellees and Frost is as follows:

"This Indenture, Made and entered into this 7th day of March, A. D. 1932, by and between the trustees of the McCoy Directory Company, hereinafter designated as first parties, and Walter K. Frost, hereinafter designated as second party, Witnesseth: Whereas, the said first parties undertook the publication of a city directory for the City of Cedar Rapids, Iowa, and Whereas, practically all the necessary material and information has been gathered by the employees of the said first parties, and Whereas, the said first parties borrowed the sum of Two Thousand ($2,000.00) Dollars from the Peoples Savings Bank of Cedar Rapids, Iowa, which is now unpaid with accrued interest and which money was used to pay for the necessary costs and expenses of gathering said information and for the purpose of publishing said city directory, and Whereas, it is necessary at this time to advance the sum of approximately $750.00 more to pay the employees and costs of gathering said material for the publication of said directory, and Whereas, the first parties have not the money on hand wherewith to pay for the completion of gathering the necessary material for the publication of said city directory, and Whereas, the said first parties have become liable and responsible for the payment of said loan from said bank and for the present wages and expenses which have accrued to date, and Whereas, the Review Publishing Company which has heretofore printed the publication of said city directory for the said first parties has refused to do so unless certain things are complied with which is not to the interest of the said first parties. Now, Therefore, it is hereby agreed by and between said first parties and said second party as follows." Here appears the formal assignment of all material, information and

copy in the matter of the contemplated publication and sale of the Cedar Rapids, Iowa, directory to Frost. The instrument then concludes: "In witness whereof, the said John Camlin, William McCoy and C. A. Pedderson, trustees of said directory company, and the said Walter K. Frost have hereunto subscribed their names and seals this 7th day of March, A. D. 1932. John H. Camlin (SEAL) William H. McCoy (SEAL) C. A. Pedderson (SEAL) Walter K. Frost (SEAL)."

Counsel for appellant also offered in evidence a copy of a bill prepared by appellee Pedderson as attorney for the plaintiff therein named. This bill was filed in the Winnebago county circuit court on June 25, 1932, and had for its purpose the liquidation of this trust. A decree rendered thereon on July 21, 1935 was also offered in evidence but objections thereto were sustained by the trial court. The bill was filed by Joseph McCoy, a son of Mary A. McCoy, who had a beneficial interest in the trust after his mother's death, and made William McCoy, John H. Camlin, C. A. Pedderson, trustees of the McCoy Directory Company, a trust, Mary Agnes McCoy, Mary Margaret McCoy, Walter K. Frost, Agnes McCoy and Charles A. Durand defendants. In this proceeding to terminate the trust appellees here, McCoy, Pedderson and Camlin, entered their appearances, and the court on July 21, 1935, entered a decree therein which found among other things that the McCoy Directory Company is operating under a trust, said trust having been declared on August 3, 1921, at which time Reuben H. Donnelly, Harry M. Johnson and John H. Camlin were duly appointed as trustees therein and the C. A. Pedderson and William McCoy were appointed in accordance with the terms of said trust, as successors in trust to the said Donnelly and Johnson who had previously died. By the terms of this decree one G. H. Rehr was appointed receiver of the trust with the consent of the acting trustees, and

the evidence tends to prove that the books of the company were delivered to the receiver having been removed from the office of Frost who actively managed the business of the McCoy Directory Company up until the time Rehr was appointed receiver. All the books and records of the company other than the journal, to which reference has been made, have disappeared.

The trust agreement of August 3, 1921, among other things provided that in all contracts entered into by the trustees, specific mention shall be made therein of the trust, to the end that all parties must look solely to the trust estate and trust funds for any claim arising under said trust. By this provision the trustees were given the power to release themselves from personal liability but in order to do so the trustees must stipulate to that effect in their contracts with a third person. In order therefore for appellees not to be liable upon the contract, which forms the basis of this suit, appellees must have stipulated that they were not to be personally responsible, but that appellant was to look solely to the trust estate. *Goldwater v. Oltman*, 210 Cal. 408, 292 Pac. 624, 71 A. L. R. 871; *Austin v. Parker*, 317 Ill. 348; *Schumann-Heink v. Folsom*, 328 Ill. 321, 159 N. E. 250, 58 A. L. R. 485. There is no evidence found in this record that tended to show that appellees in their transactions with appellant were not to be held personally responsible for the services rendered by appellant or that appellant should look alone to the trust estate for the payment of its printing bills or trade acceptances executed as evidence of the amount due appellant or that appellees should be relieved of personal responsibility in their dealings with appellant.

In this state of the record it was error for the trial court to give a peremptory instruction to the jury to find the issues for the defendants and for that error the judgment will be reversed. Inasmuch as there will be another trial we might add that the pleadings in the

proceeding to terminate and liquidate the McCoy Directory Company, a trust, were admissible in evidence. By their verified fifth special pleas, defendants Pedderson and McCoy denied that they were trustees of this trust. The trial court admitted in evidence their written entry of appearance in that proceeding and under the circumstances as shown we think the bill and decree were likewise admissible in evidence. The record discloses that defendant Camlin was examined before trial and his deposition taken under the provisions of the Civil Practice Act. His deposition however was not used but he was called as an adverse witness and the trial court refused to permit counsel for plaintiff to examine him. The provisions of the Practice Act and Rule 19 of the Supreme Court respecting depositions before trial are not, in our opinion, to be construed as limiting the right of counsel to examine an adverse party at the trial and this right should have been accorded appellant. The record discloses that Camlin was present in court and we do not think a party to a proceeding exhausts his right to examine the opposite party in open court by taking his deposition prior to the trial. There was no error committed by the trial court in admitting in evidence the several trade acceptances declared upon or the resolution of the trustees authorizing Frost to execute the same or in admitting in evidence the entry of appearance of appellees to the proceeding to liquidate the trust and their consent to the procceding to the appointment of a receiver. For the error in taking the case from the jury, however, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*