Sam Reisman et al., Appellants, v. Central Manufacturing District Bank et al., Defendants.
Charles C. Wright, Appellee, v. Howard K. Hurwith, Coappellant.

Gen. No. 42,260.

Heard in the second division

372

of this court for the first district at the June term, 1942. ▮
▮ Opinion filed November 17, 1942.

IRVING GOODMAN, HAROLD L. PERLMAN, MARVIN J. WELFELD, MURPHY & PEARSON, JOHN A. RUSSELL, MCFARLAND, MORGAN & STEARNS and JOHN D. KING, all of Chicago, for certain appellants; IRVING GOODMAN, of Chicago, of counsel.

MAX M. GROSSMAN, of Chicago, for certain other appellant.

MARTIN, ULLMANN & BROWN, of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

Central Manufacturing District Bank closed its doors and went into liquidation June 24, 1932. Thereafter a representative suit was filed in the circuit court to enforce the constitutional liability of its stockholders. The second amended and supplemental complaint alleged that Charles C. Wright was the owner of 13 shares of the capital stock of the par value of $100 each. Appropriate allegations were made as to the insolvency of the bank, its liabilities and assets, and other facts necessary to support the suit. Howard K. Hurwith was appointed receiver. February 18, 1933, one Charles C. Wright was served with summons at his residence in Oak Park, Illinois, but failed to appear or answer. November 7, 1935, a decree was entered finding that Charles C. Wright was one of the stockholders of the bank, fixing his liability at $1,300, reciting that summons had been served upon him and default entered, and directing him to pay $1,300 and costs as the owner of 13 shares of stock. Execution was issued against him, but not served.

Some five years later, in 1940, plaintiffs' counsel discovered that the wrong Charles C. Wright had been served with summons and that the Charles C. Wright who was a stockholder of the bank, resided at 6945 S. Dante avenue, Chicago. Accordingly, December 6, 1940, an *alias* summons was duly served on the Charles C. Wright who resided at the latter address, whereupon he appeared before Judge DUNNE of the circuit court March 11, 1941, and procured an order quashing the summons. Thereafter, April 4, 1941, plaintiffs, Howard K. Hurwith, the receiver, and the Charles C. Wright who resided in Oak Park, entered into a stipulation to vacate and set aside the decree of November 7, 1935 in so far as it affected Wright, and an order was entered accordingly which also provided that as to all other defendants named in the decree, except Charles C. Wright, and as to all other matters contained therein, the decree remain in full force and effect. The order directed that *pluries* summons issue against the Charles C. Wright who was a stockholder of the bank residing at 6945 S. Dante avenue, which was issued June 12, 1941, and served personally on him by the sheriff of Cook county June 16, 1941. He appeared in court July 3, 1941, and moved to quash the writ of summons and to dismiss the suit as to him, under section 48 of the Civil Practice Act. December 16, 1941, his motion to quash summons was allowed, an order dismissing the suit as to him was entered, and this appeal followed.

Wright, the appellee, takes the position that the court having entered final judgment against the Charles C. Wright who resided in Oak Park, pursuant to the service of process and default, and the term having passed, no authority existed to issue a summons in that cause against any other party, and consequently the summons and service thereon were a nullity; that there was no complaint on file and no suit pending against him; that on a previous hearing

Judge DUNNE had adjudicated that there was no suit and no complaint on file and that the court had lost jurisdiction, and no appeal having been taken from that order, it was therefore *res adjudicata*.

Wright relies largely on the authority of *Trupp v. First Englewood State Bank of Chicago,* 307 Ill. App. 258, decided by this division of the Appellate Court in November 1940. In that case plaintiffs filed a creditors' representative suit in equity to settle and determine in one action the constitutional liability of all stockholders to all creditors of the First Englewood State Bank of Chicago, which had been closed by the auditor of public accounts in June 1932. The National Republic Bancorporation was named defendant along with numerous individual shareholders. Pursuant to hearings had before the master several decrees were entered, one of which fixed the liability of Bancorporation as owner of 1,890 shares at $189,000. Some 18 months prior to the entry of that decree an involuntary petition in bankruptcy had been filed against Bancorporation, with its consequent adjudication of bankruptcy. Long after the decree of December 28, 1934, fixing the liability of Bancorporation as a shareholder, plaintiffs in that proceeding sought to amend the complaint to charge the individual stockholders of Bancorporation with liability, on the ground that certain new facts had come to light which were previously unknown to plaintiffs prior to the entry of the decree. By these facts plaintiffs sought to open the proceeding and show not only the pending bankruptcy proceedings against Bancorporation, but also to establish the alleged illegality of its incorporation for the purpose of operating a general banking system. Plaintiffs there relied on section 46 of the Civil Practice Act (par. 170, ch. 110, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 104.046]) permitting amendments of pleadings to conform to proof at any time "before or after judgment." We held, however, that sec. 46 did not purport to enlarge juris-

diction of courts to reopen a case long after final decree had been entered therein, and that the inability of a court to reopen a case after final decree had been entered and the term had expired rested upon a want of jurisdiction, and was not a question of practice or procedure. The *Trupp* case can readily be distinguished from the circumstances of this proceeding in the following respects: the stockholders of Bancorporation were never made parties to the *Trupp* suit, and plaintiffs in that proceeding sought two years after they had procured a decree finding Bancorporation to be the *owner* of 1,890 shares of the capital stock of the bank, to reopen the proceeding and fix liability against the individual stockholders of Bancorporation, who were never made parties to the suit; whereas in the case at bar this particular defendant, Charles C. Wright, was a party to the original suit, but the wrong Charles C. Wright was served with summons. Furthermore, in the *Trupp* suit no complaint was brought against the stockholders of Bancorporation, whereas in this proceeding a cause of action was stated in the original complaint against this particular Charles C. Wright. Lastly, in the *Trupp* case there was no stipulation to vacate the decree by any of the parties, as there was in the case at bar, and consequently the court had no jurisdiction after two years to do so. Our conclusion in the *Trupp* case is not at variance with the proposition that a decree or judgment may be vacated or set aside by the stipulation of the parties at any time. In *Humphreyville v. Culver, Page, Hoyne & Co.,* 73 Ill. 485, it was held as early as 1874 that although a court cannot set aside its own judgment at a subsequent term without consent, yet with the consent of all the parties it may do so. In *Steinhagen v. Trull,* 320 Ill. 382, the court, following the earlier cases, held that as a general rule a court has no jurisdiction to set aside, modify or change its judgment or decree after expiration of the term at

which it was rendered, but that this may be done at a subsequent term with the consent of all the parties, and in *Miller v. Miller,* 332 Ill. 177, it was held that although the decree was entered at a former term, the only parties interested in the suit could agree to dismiss it upon stipulation entered into pending confirmation of the sale by the master.

However, Wright's counsel advance the ingenious argument that plaintiffs sued the wrong Mr. Wright, procured a decree finding him to be the owner of 13 shares of stock, "and are now seeking to hold another because they claim he is the real owner of the stock"; that "At the time judgment was taken the Charles C. Wright who was served had to be a defendant else no judgment could have been taken against him"; that "He was named in the decree . . . after they knew who had been served, and found to be a defendant served with process"; that "If he was not the Charles C. Wright who was a defendant, there was no occasion for any stipulation to set the judgment aside or to enter any order relieving him from the burden of it"; and that "Although he may have been mistakenly or wrongfully made a defendant, he was a defendant just the same." From this argument they conclude that since the Charles C. Wright against whom judgment was taken having once been a defendant, no other defendant could be substituted for him without amendment of the pleadings and the entry of an order adding a new defendant. The argument advanced seeks to create a fiction by which the real owner of the stock will, on a pure technicality, be relieved from a liability that he does not disavow. The simple fact is that the Wright who owned 13 shares of bank stock was made a defendant, but the wrong person was served, and when the mistake was discovered it was plaintiffs' duty to advise the court and rectify the mistake. Plaintiffs could have done this of their own motion or

by means of stipulation. Because the person against whom judgment was mistakenly entered was dismissed by stipulation does not alter the fact that the right Charles C. Wright was still liable, nor does it justify the contention that another defendant was substituted. The only defendant ever named was the owner of the stock, the present Charles C. Wright, but he was never served before the entry of the decree of November 7, 1935.

It is urged in this connection that the stipulation to vacate the decree was not binding on anyone except those who entered into it, and that its only effect was to relieve one who, it was claimed, had wrongfully been sued. The only effect of the stipulation, as we view it, was to relieve the Charles C. Wright who resided in Oak Park and who was not liable because he owned no stock in the bank, from the burden of a decree for money which he did not owe. The fact that someone else with the same name may have prior thereto erroneously been served with summons should not release the present Charles C. Wright of liability or alter his position as a defendant in the proceeding. He was always a defendant because the complaint specifically made him a party. He was a stockholder of the defunct bank and does not deny that he became liable for the 13 shares that he held. His sole contention is predicated upon the fact that he was not served and that the service upon another who is admittedly not liable, should operate to relieve him, the appellee, from payment because, as he contends, the court had no jurisdiction after the term to summon him.

Whatever merit may be attached to the contention that the stipulation was not binding upon the Charles C. Wright who owned the stock is of secondary importance because of a provision in the decree entered November 7, 1935, which reserved jurisdiction in the court for further proceeding. This provision is contained in par. 17th of the decree and is as follows:

"That those defendant stockholders against whom a decree has not been rendered herein, shall upon proper service of summons or the entry of an appearance by them, be subject to the jurisdiction of this court, and this court reserves the right to enter a decree against any or all of them for the amount of the unsatisfied liabilities that accrued while they held their respective shares of stock as provided by the constitution and statutes of the State of Illinois."

It was also recited in said decree among other things:

"That this decree be without prejudice to the rights of the complainants or any of the creditors of said Central Manufacturing District Bank, a banking corporation, to proceed at a further hearing or hearings of this cause or by some other appropriate proceeding or means against the defendants who have heretofore not been served with process or as to those defendants in regard to whom this case is not at issue, or in regard to those defendants who are outside the jurisdiction of this court, or in regard to those defendants who are now deceased and whose legal representatives are not. parties hereto, and that for the purpose of determining existence and extent of the liabilities of these defendants who have either not been served with process or as to whom this cause is not at issue, or who, for some other reason, a decree has not been entered against them or their personal representatives, this court expressly reserves and retains jurisdiction for further and future hearing and determination of their respective liabilities by this court, and this court reserves the right to permit any such action or proceeding against such defendants as may be lawful, appropriate and expeditious for determining their respective liabilities."

Under the foregoing provisions the court retained jurisdiction to proceed against those defendant stockholders against whom a decree had not been entered for the amount of the unsatisfied liabilities that

accrued while they held respective shares of stock as provided by the constitution and statutes of the State of Illinois; and we think this would be equally true whether or not the decree was vacated by stipulation or otherwise.

The remaining question argued is that the order of Judge DUNNE entered March 11, 1941, quashing the *alias* summons constituted *res adjudicata.* When this order was entered the decree as to Wright had not been set aside by the stipulation of the parties. Subsequently such an order was entered and thereafter Judge HARRINGTON ordered the present Charles C. Wright to be brought into the proceeding by *pluries* summons, with which he was personally served. Judge DUNNE's order was proper, because there was at that time a decree of record against one Charles C. Wright and until it was set aside, no *alias* summons could properly issue; but when the decree was set aside as to Wright by stipulation of the parties, the court had power under its reserved jurisdiction to order a *pluries* for summoning Wright, the defendant, into court. Judge DUNNE's order had no relation to the later order for a *pluries* summons by Judge HARRINGTON and was not an adjudication of anything except the right of plaintiffs to bring Wright into the proceeding by *alias* summons before the decree was vacated.

Nothing that we have said herein is intended to predetermine the present Charles C. Wright's liability as a stockholder. He has nowhere in his brief denied his liability, but of course if he was not a stockholder or if he has any other defense to this suit he should be permitted to set it up by appropriate pleadings.

Accordingly the order of the circuit court entered December 16, 1941, sustaining the motion to quash the summons and dismiss the suit as to the present Charles C. Wright is reversed, and the cause is remanded with directions to order him to answer the second amended and supplemental complaint and for

such other proceedings thereon as are not inconsistent with the views expressed herein.

*Order reversed and cause remanded with directions.*

SULLIVAN, P. J., and SCANLAN, J., concur.