Rose C. Trupp et al., Appellants, v. First Englewood State Bank of Chicago et al., Defendants Below. Katherine Achenbach et al., Appellees.

Gen. No. 40,545.

Opinion filed November 26, 1940.

John C. De Wolfe, Robert E. Dowling and Arthur J. Murphy, all of Chicago, for appellants.

Edward J. Warren and Joseph L. Mack, both of Chicago, for certain appellees.

Bullinger & Michels, John W. Jedlan, George E. Billett, John Taylor Booz, Castle, Williams & McCarthy, Gann, Secord, Stead & McIntosh, Hopkins, Sutter, Halls & DeWolfe, Marshall & Marshall, Mayer, Meyer, Austrian & Platt, McNab, Holmes & Long, Harold L. Reeve, John Mann, Sidley, McPherson, Austin & Burgess, Frederick W. Snider and John F. Voigt, all of Chicago, for certain other appellees; Frank Michels, of Chicago, of counsel.

Mr. Presiding Justice Friend delivered the opinion of the court.

Plaintiffs filed a creditors' representative suit in equity to settle and determine in one action the con-

stitutional liability of all stockholders to all creditors of the First Englewood State Bank of Chicago, which had been closed by the auditor of public accounts in June, 1932. The National Republic Bancorporation was named defendant along with numerous individual shareholders. The cause was put at issue and referred to a master. Pursuant to hearings had from time to time the liability of various defendants was fixed or compromised on recommendation of the master and decrees were entered accordingly. One of these decrees entered December 28, 1934, fixed the liability of Bancorporation as holder of 1890 shares at $189,000, and that of the several individuals who joined herein as appellees at the sums specified in the decree. '

The first seven amendments to the complaint were necessitated by the death of certain defendants whose personal representatives were thereafter made parties to the proceeding. Under the eighth amendment, filed April 23, 1937, more than two years after the decree was entered, plaintiffs for the first time sought to have a further and additional liability decreed against some 1,250 parties who were stockholders of Bancorporation, on the ground that their stock holdings in that corporation warranted a finding that they were the real owners of shares in First Englewood State Bank. Both the eighth amendment and the subsequent amendment thereto were duly verified, setting forth that their contents were true in substance and in fact, and that the amendments were ''necessitated by facts coming to the knowledge of plaintiffs and their attorneys and events transpiring subsequent to the filing of the amended and supplemental bill of complaint.'' Of the 1,250 persons who were made parties to this amendment, 51 were originally shareholders of the Englewood Bank who acquired their Bancorporation stock through exchange of their original ownership of stock in the Englewood Bank and their liability was adjudicated by one of the decrees entered in the stockholders' liability

proceeding, and they were ordered to pay an assessment for the period during which they held Englewood Bank stock. The remaining defendants, about 1,200 in number, were not originally shareholders of the Englewood Bank, and were not made parties until more than two years after the entry of the decree December 28, 1934. With reference to these new defendants, the eighth amended complaint does not state when they acquired stock of Bancorporation, nor does it make any specific charges upon which their proposed liability is predicated; it merely alleges that "the said shareholders of said Bancorporation became such in a very large measure by exchanging their stock in the banks hereinbefore named for shares of stock in said Bancorporation."

The theory upon which it is sought to impose liability against these 1,250 shareholders is that by reason of their ownership of stock in Bancorporation they are imputed to have had knowledge that this company was organized and. operated, as alleged in the eighth amended complaint, for the fraudulent and illegal purposes of operating a general banking system in violation of the Illinois statute; that all the acts and doings of Bancorporation were ultra vires, by reason whereof its shareholders were and are and should be regarded as partners; that the owners and holders of shares of capital stock of Bancorporation were the actual and beneficial holders and owners of 1,890 shares of the capital stock of the Englewood Bank standing of record in the name of Bancorporation, which was intended to be and was a mere means, agency or instrumentality of enabling the shareholders to operate, dominate and control the Englewood Bank and each of the other unit banks, the capital stock of which was nominally held by Bancorporation; that the shareholders received dividends derived mainly from dividends paid to Bancorporation by the Englewood Bank and the other unit or member banks, and in other

respects received and possessed all the advantages conferred upon the holders of stock of banking institutions.

Defendants filed numerous motions to dismiss plaintiffs' eighth amendment, as amended, under the provisions of section 45 of the Civil Practice Act, based on some ground common to all the defendants and certain special ground applicable only to certain individuals. The motion filed by the Bancorporation specified the following grounds: (1) That the eighth amendment as amended is based upon facts existing at the time of the filing of the original complaint and at the time of the entry of the decree, and was, therefore, improperly filed; (2) that the final decree having been entered on December 28, 1934, the court is without jurisdiction to hear and determine the matters set forth in said amendment; and (3) that the final decree still remains in full force and effect and adjudicates the fact that Bancorporation was the owner of said stock, and that the court is without jurisdiction to subsequently enter a decree inconsistent with said finding. The motions to dismiss the eighth amendment, as amended, were allowed by the chancellor, and an order of dismissal was entered accordingly. Plaintiffs have prosecuted this appeal to reverse the orders thus entered.

It appears from the eighth amended complaint that more than 18 months prior to the entry of the decree in question an involuntary petition in bankruptcy was filed against Bancorporation in the District Court of the United States for the Northern District of Illinois, and that May 16, 1933, Bancorporation was adjudicated bankrupt; that on the date of its adjudication Bancorporation was "hopelessly insolvent, and unable to pay any amount whatsoever on account of its liability herein as the holder of 1,890 shares of the capital stock of the First Englewood State Bank of Chicago, or upon the decree heretofore, on December 28, 1934,

entered against it." Obviously, the proceeding against the individual shareholders of Bancorporation, instituted long after the entry of the decree adjudicating Bancorporation to be the holder of 1,890 shares of capital stock of the Englewood Bank, was designed to hold the individual shareholders of Bancorporation liable for this indebtedness because the insolvency of Bancorporation indicated that no part of the $189,000 judgment could be recovered from the corporation. It is noteworthy, however, that the pendency of the bankruptcy proceeding against Bancorporation was known to plaintiffs before the entry of the decree and the record of the bankruptcy court, including the books and accounts of Bancorporation, were open to inspection of plaintiffs and other creditors and afforded them the right of examination of all facts concerning its affairs.

It must be conceded, of course, that all the events set forth in the amended eighth complaint transpired before the closing of the Englewood State Bank and prior to the filing of the original complaint. The amended complaint itself does not make any showing to the contrary. The verification merely sets forth that the filing of the complaint "is necessitated by facts coming to the knowledge of the complainants and their solicitors . . . subsequent" to the filing thereof. By this vague statement plaintiffs seek to bring themselves within the rule that before a final decree can be set aside, a showing must be made that new and pertinent facts, not theretofore known or available, were brought to the attention of the complaining party which would justify the vacation or modification of the decree. What the "facts" are that came to plaintiffs' knowledge are not set forth, nor is any showing made that the specific facts set forth in the amendment were unknown or could not, by the exercise of ordinary diligence, have been ascertained by plaintiffs prior to the entry of the decree; and, indeed, no such showing

could fairly be made because it clearly appears that all the facts alleged with reference to illegality of the structure of Bancorporation, as well as the pendency of the bankruptcy proceeding, which constitutes the principal reason for seeking to make the individual shareholders liable in lieu of Bancorporation, were either known to plaintiffs or could as readily have been discovered from the accessible records before the entry of the decree, as after the lapse of many months preceding the filing of the eighth amendment.

Plaintiffs rely on section 46 of the Civil Practice Act (ch. 110, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 104.046]) which provides for amendments at any time before or after judgment to conform the pleadings to the proof and the addition of new parties at any stage of the cause before or after judgment is entered. They apparently claim that the Civil Practice Act enlarged the jurisdiction of courts so as to permit the proceeding here contemplated after the entry of a final decree. An analysis of section 46 of the Civil Practice Act indicates this contention is untenable. Subdivision 1 provides for amendments introducing any party who ought to have been joined as plaintiff or defendant, discontinuing as to any plaintiff or defendant, changing the cause of action or defense or adding new causes of action or defenses, and amendments in any matter, either of form or substance, in any process, pleading or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense or assert a cross demand at "any time before final judgment." It is significant, however, that the words "after judgment" appearing in subdivision 3 of section 46 are not made to appear in subdivision 1 of the same section. We think it is apparent from the Civil Practice Act that it does not purport to enlarge the jurisdiction of courts to reopen a case after final decree. The inability of the court so to do after a final decree has been entered

and the term at which the decree was entered had expired, rested upon a want of jurisdiction. The question is not one of practice or procedure, but of power. (*In re Metropolitan Trust Co.*, 218 U. S. 312; *Bronson v. Schulten*, 104 U. S. 410.) It would therefore appear that the matter is not controlled by the Civil Practice Act, which by its title relates only "to practice and procedure," but by the separate statutes entitled "Judgments, Decrees and Executions," which became effective on the same day that the Civil Practice Act went into effect. (Ill. Rev. Stat. 1939, ch. 77, secs. 1 to 4, pars. 82 to 85 [Jones Ill. Stats. Ann. 104.099–104.102].) It is by virtue of this latter statute, relating to judgments and decrees, that the expiration of 30 days after the rendition of the judgment or decree, instead of the expiration of the term, now marks the limit of the court's jurisdiction to reopen the matters determined by final decree. (*Davis v. East St. Louis & Suburban Ry. Co.*, 290 Ill. App. 540; *Seither & Cherry Co. v. Board of Education*, 283 Ill. App. 392.) Therefore, it seems fairly clear that plaintiffs' attempt to justify their right to amend after decree cannot be predicated upon the provisions of the Civil Practice Act; it must be determined by the long line of decisions in this State applicable to the finality of decrees.

The law of this State is uniformly to the effect that a supplemental bill cannot be filed after decree based upon facts existing at the time of the filing of the original bill of complaint. In the early case of *Hood, Bonbright & Co. v. Green*, 42 Ill. App. 664, a demurrer was sustained to a supplemental bill filed by plaintiffs. In sustaining the order, the court pointed out that no reason was given in the supplemental bill "why the facts relied upon to sustain it were not put in the original bill by amendment, . . ." and the court, quoting from Story's Equity Pleading, section 423, said: " 'If, therefore, the party proceeds to a decree, after a discovery of the facts upon which the new claim is

founded, he will not be permitted afterward to file a supplemental bill, in the nature of a bill of review founded on these facts; for it was his own *laches* not to have brought them forward at an earlier stage of the cause.'" Later, in *Aldrich v. Maher,* 153 Ill. App. 413, the court went a step further and said (p. 419): "The supplemental bill was improperly allowed to be filed. No new matter occurring since the filing of the original bill and not within the knowledge of the parties *or accessible to them at the time of its filing* was alleged in the supplemental bill. . . . If complainants were entitled to the additional relief sought by the supplemental bill at the time these proceedings were commenced, then they lost that right by not claiming it before taking the decree originally entered adjudicating their rights. . . . The affirmed decree settled the rights of the parties, and that decree cannot be enlarged by adding thereto any additional right existing at the entry of the former decree. Neither can a decree be amended after the term at which it was entered. (*Adams v. Gill,* 158 Ill. 190.)"

Plaintiffs' counsel argue that they were entitled to proceed under the eighth amended complaint by reason of the showing made in their verification to the complaint that the amendments were "necessitated by facts coming to the knowledge of plaintiffs and their attorneys and events transpiring subsequent to the filing of the amended and supplemental bill of complaint." As hereinbefore pointed out, however, this is not sufficient. It appears from the record that the facts upon which the eighth amended complaint are predicated existed long prior to the filing of the original bill, and before the decree was entered, and by the exercise of diligence could easily have been ascertained. The avenues of information which led to the discovery of these facts after the entry of the decree were open to plaintiffs during the entire pendency of the cause, and no showing is made as to when these

facts were discovered by them or why they could not have been discovered at a much earlier date.

The decree of December 28, 1934, adjudicates the fact that Bancorporation was the owner of the stock in question, and orders it and other defendants named therein to pay to the receiver within 10 days from the date of the entry of the decree, the sums specified, "in satisfaction of their respective constitutional super-added liabilities, as stockholders of said First Englewood State Bank of Chicago, upon those shares of stock held by them as hereinbefore and hereinafter set forth." That adjudication had all the characteristics of a final decree, and it would manifestly be inconsistent for the court, more than two years later in the same proceeding, to adjudge that the individual shareholders of Bancorporation are the "true owners of the stock." In *City of Detroit v. Highland Park*, 186 Mich. 166, 152 N. W. 1002, the court, in referring to decrees entered in an analogous proceeding, said (p. 175): "Those decrees were in no sense interlocutory or merely incidental to the progress of the suit, but upon the questions raised, facts found and points decided were a full and final disposition of the case upon its merits, as matters then stood, were appealable, and ended litigation as to those issues unless reversed on appeal, and no appeal was taken. They cannot therefore be again called in question by the parties who litigated them, or those in privity with them, no matter in what form the question be presented." It was suggested by counsel for plaintiffs, upon oral argument in the present case, that decrees in this kind of proceeding were in some sense different from ordinary final decrees, but we think the law is as stated by the Michigan court in the foregoing quotation.

It must be conceded without the citation of authority that the long line of decisions in this State are uniformly to the effect that final decrees may be impeached, vacated or set aside only by one of the

well-recognized methods of procedure, known as bills of review or bills in the nature of bills of review, unless jurisdiction is specifically reserved within the decree to modify its provisions. Such proceedings fall within three general classifications: (1) newly discovered evidence; (2) fraud in procuring the decree; and (3) errors apparent upon the face of the record. Plaintiffs do not rely upon any of these grounds, and indeed they do not even seek to set aside the decree, but rather, by injecting a new theory of law, they seek to impose liability upon the individual shareholders on the theory that they were the real owners of Bancorporation stock. We do not pass upon the question whether such relief could have been obtained against the individual shareholders if the complaint had originally been brought upon that theory or amended before decree; nor do we consider it necessary to determine that question, because in the view we have taken it is too late to raise it.

The law which fixes a definite time limit when jurisdiction once acquired in a cause comes to an end is well grounded in public policy. In *United States v. Mayer*, 235 U. S. 55, 70, Mr. Justice HUGHES pointed out that such a rule "embodies the policy of the law that litigation be finally terminated," and unless sufficient grounds exist and a proper showing is made, a final decree should not lightly be disturbed.

The only remaining ground upon which the court could have entertained the eighth amended complaint is the contention that by the decree the court retained jurisdiction to proceed against the individual shareholders. An examination of the decree discloses that the only jurisdiction reserved was as follows: Under par. XI the court retained jurisdiction of the cause for the purpose of causing distribution to be made to the persons thereto entitled of the sums collected thereunder, and for the purpose of passing on questions arising with respect to the enforcement of the decree

and the compromise and settlement of liabilities in accordance with the statute. Par. XII provided that the decree should ''be without prejudice to the rights of the complainants herein to proceed at a future hearing in this cause or by other proceedings against the defendants not heretofore served with process herein,'' *specifically naming them,* ''and the existence and extent of whose liabilities are not determined by this decree, and for which purpose this cause be and the same is hereby retained by the Court for future hearing and determination.'' Under par. XIII the court retained jurisdiction to hear exceptions to the master's report and enter orders or decrees in respect to the liabilities of three other specifically named defendants, none of whom is involved in this litigation. Except as set forth, the decree contained no provisions with reference to the retention of any jurisdiction in the cause, and we think the foregoing jurisdictional reservations do not cover and were never contemplated to permit proceedings to bring in a large group of new parties against whom no relief was originally sought.

Plaintiffs and defendants devote considerable space in their briefs to the question whether both the record owner and the real owners of stock are liable to assessment and whether Bancorporation was engaged in branch banking contrary to public policy, thus making its stockholders personally liable to its creditors. However, in view of our conclusions as to the jurisdictional question herein discussed, we think it unnecessary to consider these questions.

The decree adjudicating Bancorporation to be the owner of 1,890 shares of stock of the Englewood Bank was procured by plaintiffs in a cause instituted by them. It was the decree they sought and obtained and we see no valid reason why they should be permitted, after the lapse of more than two years, to have it changed or supplemented so as to create a new liability against numerous individuals which would be

inconsistent with the findings of the decree. The decree of the court allowing the various motions to dismiss the eighth amended complaint, as amended, and dismissing the same, should be affirmed. It is so ordered.

*Decree affirmed.*

SCANLAN and JOHN J. SULLIVAN, JJ., concur.