## RECONSTRUCTION FINANCE CORPORATION v. BARRETT.

### No. 7992.

Circuit Court of Appeals, Seventh Circuit.

Dec. 4, 1942.

Maurice Kelner, of Chicago, Ill., for appellant.

Lee Walker, M. O. Hoel, and George D. Kaplan, all of Chicago, Ill., for appellee.

Before EVANS and MINTON, Circuit Judges, and LINDLEY, District Judge.

MINTON, Circuit Judge.

The plaintiff brought a representative creditor's suit in equity against the stockholders of the Central Republic Trust Company to enforce the stockholders' double liability. The original complaint filed November 19, 1934 alleged that Wilbur Sundeen was the registered owner of 200 shares of stock of the bank on October 6, 1932, a date on which a large sum of money was advanced by the plaintiff to the bank. On May 1, 1937 a decree was entered against Sundeen for twenty thousand dollars, plus interest and costs, for the added liability as stockholder in said bank.

Thereafter on January 15, 1940 the receiver, with the court's approval, after a showing by Sundeen that he was insolvent, authorized the compromise of the judgment against him for $600. The court directed the receiver to accept the offer in compromise, and provided in its order:

"This order shall be without prejudice to the liability of any person or persons, or to the rights of the Reconstruction Finance Corporation to proceed against any person or persons, as the actual and beneficial owner of said two hundred (200) shares of stock of said Central Republic Trust Company (formerly Central Republic Bank and Trust Company) registered on the books of said bank in the name of said Wilbur Sundeen."

On February 2, 1940 the defendant-appellant, Carl A. Barrett, was by amendment to the original complaint charged with being the real owner of the 200 shares of stock registered in the name of Wilbur Sundeen. Barrett in his answer admitted all the allegations of the complaint, except that he owned the stock. On this issue the court below found against him that he was the real owner of the stock, and entered judgment against him for $19,400, with interest and costs.

From this judgment Barrett has appealed, and two questions are presented for our consideration: first, whether there was substantial evidence to support the finding of the District Court that the defendant, Barrett, was the actual owner of the 200 shares of bank stock; and second, whether the acceptance by the receiver of $600 in compromise of the judgment against Sundeen and the satisfaction of that judgment of record bars the plaintiff's action against the actual owner, Barrett, notwithstanding the reservation of the plaintiff's rights contained in the order of compromise and settlement.

In considering the question of whether or not there is substantial evidence to support the findings of the District Court, we look only to the evidence that is favorable to the court's findings. The following facts are supported by evidence in the record:

On June 28, 1932 the defendant, Barrett, was president of the Illinois Automobile Club. On June 28, 1932 Barrett, through his brokerage account, bought 200 shares of stock in the Central Republic Bank and Trust Company for $2,803. The purchase orders of the broker showed the stock purchased for the account of Carl Barrett. The broker's ledger sheet showed that on June 29 a check for $1,700 was credited against this purchase, and it does not appear whose check was deposited with the broker. The receipts of the broker showed the $1,700 was received in currency. On the same date the broker transferred a credit of the defendant of a premium on 35 shares of United States Steel stock in the sum of $774.98 against the balance due on the purchase price of the bank stock. On the same date, the defendant deposited four shares of American Telephone and Telegraph Company stock with the broker. After giving effect to a 14¢ premium charge and an 18¢ interest charge, there was left owing a balance of $328.34 on the bank stock transaction. On July 1, 1932 the broker sold the American Telephone and Telegraph Company stock for $300.14, which left a balance due of $28.20, and this balance was paid in currency deposited by Wilbur Sundeen, but the broker's receipt did not indicate whether it

was cash or currency. The broker's books and receipts showed that on July 5, 1932 there was deposited in Barrett's account currency in the sum of $1,074.98, which was within a few cents of the sum realized from the sale and transfer of Barrett's stocks. There was no explanation in the record why Sundeen took three payments to satisfy the account, if he had $3,000 in cash in the safety vault at the Auto Club, as he testified. The stock was issued in the name of Wilbur Sundeen.

In July, 1933 the defendant through a different broker presented for sale the 200 shares of bank stock registered in the name of Wilbur Sundeen. The memorandum of sale by the broker for 100 shares indicated that it was sold for Carl Barrett for Wilbur Sundeen. As to the other shares, the memorandum does not mention Sundeen's name. The confirmation slips of the transaction showed 100 shares sold for Wilbur Sundeen, but the slips for the other 100 shares did not mention Sundeen's name. The check for $284.50, covering the sale price of 100 shares, was made to Wilbur Sundeen and endorsed by him, and the next endorsement on the check is that of the Illinois Automobile Club. The check for the other 100 shares was made out to *William* Sundeen in the sum of $234.50, and was endorsed by Wilbur Sundeen, and the next endorsement thereon is by the Illinois Automobile Club. The confirmation slips were mailed or delivered to the defendant.

Prior to the sale of the stock, a suit was filed by Wilbur Sundeen against the Central Republic Bank and Trust Company to recover the value of the 200 shares of stock, on the ground that the officers of the bank had taken certain action without the approval of the stockholders. This suit was settled for $5,100. Check in settlement was drawn payable to Sundeen and his attorney, Ryer. Mr. Ryer was also attorney for Barrett and the Illinois Automobile Club. Barrett was present at the lawyer's office when the suit was settled and the check passed. Who got the money does not appear, although Sundeen did not get it, as he testified that the bank stock was a total loss to him.

Barrett did not appear as a witness in his own behalf, but was called by the plaintiff under Rule 43(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. It was Barrett's contention that he acted for Sundeen, who was employed as a handy man around the Illinois Automobile Club at a salary of $25 per week. Sundeen was thereafter discharged by the club, as reported to Barrett, for drunkenness.

Sundeen was also called by the plaintiff as a witness under Rule 43(b) of the Federal Rules of Civil Procedure. He testified that the stock was purchased by Barrett for him, that he had saved $3,000 over a period of years, and that he kept the $3,000 in cash in a box in the safety vault of the Illinois Automobile Club. Before working for the Illinois Automobile Club, Sundeen had been employed for one year at $150 a month, for another year at $30 a week, and for seven years prior thereto at $175 a month. January 28, 1939 he filed with the Reconstruction Finance Corporation a financial statement in which he showed not a dollar of assets, and that he had no income. He was unemployed at the time of the hearing.

Sundeen's memory about the handling of transactions which involved the investment of his life savings was quite vague. One cannot read his equivocal testimony without being impressed with the view that Sundeen was covering up the transactions for Barrett.

Likewise, the testimony of Barrett shows his lively interest in every phase of the transactions, while Sundeen had no idea how the transactions were handled, and testified that the stock was a total loss to him, when, as a matter of fact, the stock cost him only $2,803, and he recovered in a law suit damages in the sum of $5,100, not to mention the sum of approximately $600 for which the stock finally sold. If the stock was a total loss to him, he apparently did not get this money.

The memory of the defendant, Barrett, was also vague, and his testimony that he did not know or did not remember was frequently changed when confronted with the documentary and other evidence.

We think from all of the evidence in the case that it was not an unreasonable inference for the District Court to conclude that Sundeen was not the real owner of the stock and that Barrett was. The District Court had the witnesses before it, and it is the judge of the credibility of the witnesses and the weight to be given to their testimony. We think there is substantial evidence to support the finding of the District Court that the defendant, Barrett, was the owner of the stock.

748

■ The defendant contends that the compromise and settlement of the judgment against Sundeen and the satisfaction of that judgment are a bar to the plaintiff's action against the real owner, the defendant, Barrett. We held in Ericson v. Slomer, 7 Cir., 94 F.2d 437, and in Reconstruction Finance Corporation v. Pelts, 7 Cir., 123 F.2d 503, that judgment for the added stockholders' liability could be had against both the owner of record and the actual owner, but that there could be only one satisfaction. By that we meant there could be only one satisfaction of the liability evidenced by the amount in judgment. In the Ericson case [94 F.2d 441], we said: " * * * neither should either of the parties whom the law makes liable be permitted to shield himself from such liability by asserting an unsatisfied judgment has been obtained against the other. To hold otherwise is to lay down the bars so that fraud may be committed upon the creditors of the bank. There can be required only one satisfaction of the stock liability. A judgment against either and a satisfaction, of course, would constitute a bar to a judgment against the other. A partial satisfaction would constitute a bar pro tanto."

The satisfaction in the case at bar was only a pro tanto satisfaction.

■■ The owner of record is liable because he is the owner of record, and he will not be heard to deny his liability. The actual owner, though not of record, is liable because of the voluntary relationship he has assumed towards the stock as owner in fact. The obligations are entirely separate and several. In Reconstruction Finance Corporation v. Pelts, supra, we stated that the liability of the stockholder attaches by force of the statute of Illinois. Ill.Rev. Stat.1941, c. 16½, § 6. This creates an obligation from the stockholders to the creditors, and the Supreme Court of Illinois has held that this is a several obligation. Golden v. Cervenka, 278 Ill. 409, 116 N.E. 273.

■ When the obligation to pay has been fully met, that is all the judgment creditor is entitled to, and until it has received that full satisfaction, it may pursue either or both of its judgment debtors. In seeking to collect the double liability of the stockholders, the plaintiff is trying to collect the whole of the established liability. It is not engaged in a mere game of recovering judgments. It is engaged in collecting money, not judgments.

Notwithstanding the fact that we think satisfaction of one several obligation, which does not discharge the whole of the liability, is not a bar to recovery from another several obligor for the same liability, under the law of Illinois it would make no difference whether the judgment was joint or several. If the release of one is with the distinct and clear reservation of rights against the other, as was done in the order of satisfaction and settlement in the case at bar, it may be treated as a covenant not to sue, and the other obligor is not released. Parmelee v. Lawrence, 44 Ill. 405, 411, 413; Van Meter v. Gurney, 251 Ill. App. 184, 187.

The judgment of the District Court is affirmed.