## ROSCHEK v. WILLIAMSON.

### No. 8414.

Circuit Court of Appeals, Seventh Circuit.

May 5, 1944.

Rehearing Denied June 6, 1944.

Lenn J. Oare and James F. Thornburg, both of South Bend, Ind. (Seebirt, Oare & Deahl of South Bend, Ind., of counsel), for appellant.

Louis M. Hammerschmidt and Milton A. Johnson, both of South Bend, Ind., for appellee.

Before SPARKS, MAJOR, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The receiver of the New Albany National Bank of New Albany, Indiana, brought suit in the United States District Court for the Northern District of Indiana, South Bend Division, against the defendant, Stella E. Williamson, to recover the stockholder's statutory liability on 14¼ shares of stock of the bank, which, it was alleged, the defendant was the record owner of on June 1, 1934. During the progress of the suit, the receiver sold the assets of the bank to G. A. Roschek, who was substituted as the plaintiff. The jury returned a verdict for the defendant. From judgment entered upon this verdict, the plaintiff has appealed.

In October, 1925, Arthur B. Williamson, the husband of the defendant, received stock certificate No. 479 for 14¼ shares of stock in the New Albany National Bank, the stock in question, from his father's estate. On January 14, 1930, Arthur B. Williamson disappeared, and he was found dead in the St. Joseph River February 26, 1930. It was stipulated that he died January 14, 1930. In his lifetime, Mr. Williamson had pledged the stock to the St. Joseph Loan & Trust Company of South Bend, Indiana, to secure a loan of $1,800. On February 7, 1930, Louis M. Hammerschmidt, a brother-in-law of the defendant, paid this loan with funds furnished him by the defendant's father, George Borgerding. The collateral was surrendered to Mr. Hammerschmidt, and

he sent the note and stock certificate to Mr. Borgerding at New Albany. Attached to the stock certificate was an assignment in blank by A. B. Williamson, who, it was stipulated, was the same person as Arthur B. Williamson.

It was further stipulated that on February 10. 1930, certificate No. 479 was surrendered to the bank and a new certificate for the same number of shares was issued to Stella E. Williamson. This certificate purported to be received for Stella E. Williamson by George Borgerding. The defendant denied that Mr. Borgerding had any authority to represent her in the transfer or in the receipt of the new certificate. She denied that she ever knew anything about the stock being transferred to her name or that a new certificate had been issued to her. She never saw or received the certificate.

On June 30, 1930, the bank paid a dividend of $71.25 on this stock and paid a like sum on December 31, 1930. Both checks were drawn upon the bank and were signed by its president. In the left-hand corner appeared the words, "Dividend No. 121," and "Dividend No. 122," respectively. The checks were made payable to Stella E. Williamson, and she endorsed and cashed them. She owned no other stock from which she might have received dividends. She testified, however, that she did not remember receiving the dividend checks, and that she did not know they were checks for dividends payable to her on stock standing in her name on the bank's books. She was a housewife with no business experience and was greatly distraught at the time over the tragic death of her husband and the serious illness of her son.

On March 23, 1934, the bank was declared insolvent by the Comptroller of the Currency, and on June 1, 1934, an assessment was levied on the stockholders for the statutory liability. On June 11, 1934, the receiver sent a notice of the assessment to Arthur B. Willliamson, South Bend, Indiana, who had then been dead for more than four years.

Arthur B. Williamson had died intestate, and in 1934 the defendant took out letters of administration on his estate, which was found to be insolvent. In the estate's administration, the receiver of the bank filed a claim in which he alleged that Arthur B. Williamson was the owner of the stock as shown by the books of the bank. The defendant as administratrix allowed the claim and paid the receiver $309.64 as his distributive share of the estate. On July 25, 1937, the receiver executed a receipt for this sum which recited that it was, "in full settlement of the claim filed by the receiver against said estate on an assessment of Fourteen Hundred Twenty-five Dollars ($1425.00)." The stock was never inventoried nor were the dividends.

On June 26, 1939, the receiver addressed a letter to the defendant stating that she was liable for the balance due on the assessment. Upon her failure to pay, the receiver instituted this action.

The plaintiff contends that the trial court erred in denying his motion for a directed verdict and in instructing the jury over his objection that, before it could find for the plaintiff, it must find that the defendant was in fact the owner of the stock.

We do not think the court erred in denying the plaintiff's motion for a directed verdict. The defendant had denied in her answer and on the trial as a witness in her own behalf that she ever knew that this stock had been transferred to her. She had never received the new certificate. She had received no notice of stockholders' meetings nor had she received the bank's reports to its stockholders. She had never authorized her father or anyone else to have this stock transferred to her or to receive the certificate for her upon such transfer. She was a woman inexperienced in business and greatly distraught at the time over the tragic death of her husband. She had no recollection of what the checks were for, or even of cashing them. The checks themselves showed only that they were dividend checks. They did not show of what corporation they purported to be dividends, or in whose name the stock stood, or how many shares of stock there were. Certainly a woman inexperienced in business could not have told from looking at those checks that they were dividend checks for stock of the New Albany National Bank standing in her name on the books of the bank.

Counsel for the plaintiff takes the position that the cashing of the dividend checks by the defendant was such an exercise of ownership and dominion over the stock as to estop her from denying ownership, within the rule of Keyser v. Hitz, 113 U.S. 138, 10 S.Ct. 290, 33 L.Ed. 531. The facts were quite different in that case than in

the one we are considering. In addition to the fact that the dividend checks there signed were for $800 each, an amount considerably in excess of the dividend checks here involved, the defendant's signature appeared on an application for the conversion of the savings bank into a national bank. Furthermore, the checks she signed were drawn by the cashier of the bank and contained the words: "Pay to Jane C. Hitz, or order, $800, fourth dividend, payable this day on stock standing in her name on the books of this bank, and charge to dividend account, No. 3300." The endorsement of that check, the Supreme Court held, was sufficient to estop the payee, Mrs. Hitz, from claiming that she was not the owner of the stock.

■ There was no such information upon the checks signed by Stella E. Williamson. The checks themselves did not, as the Hitz checks did, contain sufficient facts to estop the defendant as a matter of law from denying ownership of the stock. Since no estoppel arose from the cashing of the checks, that act became merely a fact, along with all of the other facts in the case, to be considered by the jury. It was the jury's duty to determine whether the defendant knew at the time of the transfer that the stock was being changed to her name on the books, or whether, if it was put there without her knowledge, she ratified the transfer by subsequently dealing with the stock as owner after knowledge of the transfer. The defendant cannot be held liable as owner of this stock if it was transferred upon the books of the bank without her knowledge and consent, unless she thereafter ratified the unauthorized transfer. Williams v. Vreeland, 3 Cir., 244 F. 346. Whether she knew that she was the record owner, or, if not, whether she dealt with the stock in a manner which would have furnished her this knowledge, were issues of fact properly left to the jury.

■■ The plaintiff alleged in his complaint that the defendant was the record owner of the stock. There was no claim that she was holding the stock for someone else. The court instructed the jury upon the theory upon which the plaintiff sued. The plaintiff will not now be heard to complain that the court's instructions were erroneous because they did not cover some other theory. We recognize the fact that there are cases where one who is not the owner in fact may be held for the statutory liability. Reconstruction Finance Corporation v. Pelts, 7 Cir., 123 F.2d 503; Reconstruction Finance Corporation v. Barrett, 7 Cir., 131 F.2d 745; Munro v. Huber, 2 Cir., 109 F.2d 97. We do not understand the plaintiff to contend that the defendant is liable on any such theory. The plaintiff asserted that the defendant's liability grew out of her holding the stock as her own. The court instructed that the plaintiff could not recover unless the defendant was shown to be in fact the owner. This instruction squared with the allegations of the plaintiff's complaint, and it was not error to give it. On the whole, the instructions were more favorable to the plaintiff than he was entitled to.

The judgment is affirmed.