## RECONSTRUCTION FINANCE CORPORATION v. GOLDBERG.

### No. 8497.

Circuit Court of Appeals, Seventh Circuit.

June 28, 1944.

Rehearing Denied Aug. 1, 1944.

---

* In the paragraph beginning with the words "We cannot" and ending with the words "ninety district courts."

754

Meyer Abrams, of Chicago, Ill. (Shulman, Shulman & Abrams, of Chicago, Ill., of counsel), for appellant.

Lee Walker, M. O. Hoel, George D. Kaplan, and Irving T. Zemans, all of Chicago, Ill., for appellee.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a decree, entered December 17, 1943, following a hearing on plaintiff's motion for a summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723(c). The decree was predicated upon a finding that the defendant was the owner of a pro rata portion of 930 shares, in the aggregate, of bank stock in Central Republic Trust Company (formerly Central Republic Bank and Trust Company), a banking association of the state of Illinois, which stock was registered in the name of a nominee, one Robert W. Martin.

The original bill of complaint, filed November 19, 1934, named Martin as the registered owner of said 930 shares of stock on certain dates on which large sums of money were advanced by plaintiff to the bank. A decree was entered on May 1, 1937 upon this original complaint against numerous holders of stock, including Martin, and ordered that Martin pay to the receiver the sum of $93,000, plus interest and costs. That decree contained the following reservation of jurisdiction:

"In addition, this decree shall be without prejudice to any future hearing or proceeding in this cause, * * * against any or all persons who may be liable in any manner on account of shares of stock of said bank * * * which any persons at any time owned * * * and for the purpose of any such future hearing or proceeding in this cause this Court expressly retains jurisdiction of this cause.

"Plaintiff, with leave of this Court, may amend and supplement its bill of complaint or file such other pleadings in this cause as may be necessary, at any time hereafter,

against any of the defendants in this cause or against any other persons referred to in this paragraph * * *."

Subsequently, it was discovered that Martin was not the real owner of the bank stock but was merely a nominee for a trust designated as the "Illinois Securities Syndicate," comprised of thirty-six members who subscribed $495,000 for investment by Max Goldberg (instant defendant) and two others as the Managing Committee. The agreement among other things provided: The Managing Committee should hold legal title for all funds and property with powers and subject to the limitations of said agreement declared; the entire management of the Syndicate and its properties should be in the Managing Comittee; the Committee should receive compensation to be paid prior to distribution of assets to Syndicate members; the Committee members might in their individual capacities be members of the Syndicate, and if they were, should in addition to their compensation as Committee members share in the proceeds of the Syndicate on the basis of their subscription to the Syndicate; and on termination of the Syndicate, or from time to time prior thereto, as the Committee might elect, the Committee should distribute to Syndicate members all of Syndicate assets in the proportion which they respectively subscribed to the Syndicate.

The agreement also contained what is referred to as a standard exculpatory clause, which in effect provided that neither the members of the Managing Committee nor the members of the Syndicate should be personally liable for any debt incurred or for any contract or undertaking made by the Managing Committee, and, further, that in every contract or undertaking entered into by the Managing Committee reference was to be made to the Syndicate agreement and should provide that any person contracting with such Committee should look only to the funds and property held by them under this agreement as security for the performance of said contract and for the payment of any debt, damage, judgment or decree that may become due and payable by reason of the execution of such contract.

The defendant Goldberg, as stated, was one of a three-member Managing Committee of the Syndicate and was also a member of the Syndicate, having subscribed $100,000, or 100/495ths of the total amount subscribed by the Syndicate membership for investment by the Managing Committee. The bank stock was purchased by the Managing Committee with the Syndicate funds. The stock dividends paid by the bank to Martin as record owner were transmitted by the latter to members of the Managing Committee in their capacity of such managers.

On July 8, 1941, an amendment was filed to the original complaint, in which Goldberg and six other Syndicate members were made parties-defendants. The amended complaint related certain facts concerning the Syndicate agreement and the subscriptions thereto, including that of Goldberg, as heretofore noted, and alleged alternatively that Goldberg was the actual and beneficial owner of 100/495ths of the 930 shares of bank stock registered in Martin's name; or that the Syndicate members were co-partners and as such were the actual and beneficial owners of the 930 shares of such stock; or that the Managing Committee were the actual or beneficial owners of said bank stock.

Defendant moved to dismiss the complaint for want of equity or, in the alternative, for summary judgment in his favor. Defendant by answer alleged numerous defenses which may be briefly stated as follows: (1) denying that he was the beneficial owner of any of the stock and alleging that the Syndicate was a valid trust under the Illinois law; that the trust was the beneficial owner and not the defendant; that the defendant was not liable either as a "share holder," "partner," or "trustee" because of the provisions in the trust agreement exempting him from any personal liability; (2) that plaintiff elected to hold the registered owner liable when it knew that he was a mere nominee for the Syndicate, and that by such election defendant was released; (3) that plaintiff, by collecting certain sums from other members of the Syndicate had released the defendant; and (4) that plaintiff was guilty of laches in delaying action for four years after it knew of the alleged beneficial ownership of the stock by members of the Syndicate, thereby permitting defendant's position to become changed.

In addition to the pleadings, certain affidavits, depositions and admissions were before the court, which we see no occasion to describe. At the time of the hearing of plaintiff's motion for summary judgment, twenty-six members of the Syndicate, in-

cluding six named with the defendant in plaintiff's amended complaint, had paid their proportionate part of the decree against Martin plus certain of the interest thereon, and twelve were deceased, bankrupt or nonresident. There remained unpaid on said decree the sum of $41,706.01. The judgment against the defendant was in the amount of $18,787.88, plus interest on said sum from May 1, 1937. This amount represented the same proportion of the judgment against Martin as was represented by Goldberg's investment in the Syndicate.

■ It will be noted that plaintiff alleged three theories upon which it sought to fix defendant's liability, (1) as a shareholder in the trust, (2) as a partner, and (3) as a trustee. Defendant makes much of the point that the court erred in denying his motion to require the plaintiff to elect on which of these so-called inconsistent remedies it predicated its right to recovery. We think there is no merit in this contention. We doubt if plaintiff by such allegation was pursuing inconsistent remedies. After all, the main question for decision was whether defendant was the real or beneficial owner of the bank stock, and the most that can be said of the complaint is that it stated different theories on which such ownership might be shown. But even though inconsistent remedies were alleged, such practice is permissible under the Federal Rules of Civil Procedure. Rule 8(e) (2) provides:

"A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or on equitable grounds or on both."

Defendant, in support of his contention as to election, cites In re Miller-Rose Co., 7 Cir., 36 F.2d 203, and Hammond v. United States, Ct.Cl., 42 F.Supp. 284. Neither of these cases has any application for the reason that the Miller case was decided prior to the adoption of the Federal Rules of Civil Procedure, and the Hammond case was decided by the Court of Claims, to which the rules are not applicable. On the other hand, a number of courts have decided against defendant's contention. Ottinger v. General Motors Corp., D. C., 27 F.Supp. 508; Kraus v. General Motors Corp., D.C., 27 F.Supp. 537; Munzer v. Swedish American Line et al., D.C., 30 F.Supp. 789. Furthermore, Rule 54(c) provides:

"* * * every final judgment shall grant· the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in its pleadings."

■ It is true the court made no express statement as to the theory upon which its judgment was predicated. It is plain, however, and this is admitted in defendant's brief, that the judgment was based on the theory that defendant was a benficial owner of the bank stock in proportion to the amount of his investment in the trust. Otherwise, his liability either as a partner or as a trustee would have been in a greater amount. The court having utilized the theory which would produce the smallest judgment, it is difficult to discern in what manner defendant has been harmed by the court's refusal to require an election, even though it had been a discretionary matter with the court. Furthermore, even though the court had relied upon a wrong ground for its judgment, it must be affirmed if correct. Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224; LeTulle v. Scofield, 308 U.S. 415, 421, 60 S.Ct. 313, 84 L.Ed. 355.

■ Defendant's main argument is bottomed upon the premise that the Illinois Securities Syndicate was a valid trust under the law of Illinois. The lower court made no decision on this contention, and plaintiff argues that it is immaterial. We agree with plaintiff that the question of the validity of the trust is not decisive of the question of defendant's liability, although at the same time we have no doubt but that it was a valid trust under the Illinois cases. Schumann-Heink v. Folsom, 328 Ill. 321, 159 N.E. 250, 58 A.L.R. 485; Levy v. Nellis, 284 Ill.App. 228, 1 N.E.2d 251. Upon the premise thus stated, defendant contends, correctly we think, that the matter of defendant's liability must be decided in accordance with the law of Illinois. It is further contended that under the decisions of that state a shareholder of a valid trust is not liable.

■ In this connection, much reliance is placed upon the so-called exculpatory clause of the trust agreement, by which both the trustees and shareholders sought to protect themselves from debts or obligations of the trust. Defendant relies upon such cases as the Folsom and Levy cases, supra, and In re Estate of Conover, 295

Ill.App. 443, 14 N.E.2d 980. Without reviewing these cases, it is sufficient to note that they recognize that such a clause in a trust agreement, if known to the third party, relieves the trustees and perhaps the shareholders of liability. That the third party must have knowledge of this limited liability is pointed out in Review Printing & Stationery Company v. McCoy, 291 Ill.App. 524, 538, 10 N.E.2d 506, 511, wherein the court stated:

"In order therefore for appellees not to be liable upon the contract, which forms the basis of this suit, appellees must have stipulated that they were not to be personally responsible, but that appellant was to look solely to the trust estate."

■ Defendant further argues that the third party in the instant transaction had knowledge of the limited liability clause of the trust agreement and, therefore, cannot recover from the defendant either as a shareholder or as a trustee. We have some difficulty in ascertaining to whom the defendant refers as the third party, but it appears that it is either Martin, the record owner of, or the bank which issued the stock. In our judgment it is neither Martin nor the bank, but the Reconstruction Finance Corporation, the creditor of the bank, and there is no allegation in the pleading that at the time such loan or loans were made that it had any knowledge of this provision in the trust agreement. Such being the case, the provision, even under the Illinois authorities upon which defendant relies, would be wholly ineffective in relieving the defendant of liability. In other words, defendant's position would be no different than if the agreement had been silent as to liability.

■ Furthermore, any doubt on this score is completely eliminated when it is considered that the liability here asserted arises by reason of a provision in the Illinois Constitution, Article 11, Par. 6, Smith-Hurd Stats., and by legislative enactment. Par. 6, Chap. 16½, Ill.Rev.Stats.1943. No Illinois case, so far as we are aware, has held that an exculpatory clause in a trust agreement or any other kind of agreement is effective as against the character of liability here asserted. It has been held that the legislature is powerless to give relief against this constitutional liability. As was said in Sanders v. Merchants' State Bank, 349 Ill. 547, 557, 182 N.E. 897, 900:

"No banking act can go into operation in this state of which the constitutional provision in question shall not be a part. By virtue of the inherent power of the Constitution itself, such provision is grafted into every banking law which is passed by the Legislature or submitted to the votes of the people."

Again, in Heine v. Degen, 362 Ill. 357, 379, 199 N.E. 832, 842, the court, referring to this constitutional liability, stated:

"The liability is a primary one imposed by the Constitution and the statute, and is read into the contract of purchase, by operation of law, whenever a share of stock is bought. It does not spring from any wrong or failure to observe the law."

■ A trust agreement is of common law origin. The rights and obligations are dependent upon the agreement made by the parties. If the legislature is without power to give relief against this constitutional liability, as has been held, it would seem to follow without any room for doubt that such a purpose could not be accomplished by contract of the parties. We would have serious doubt that such a provision would control, even though the R.F.C. had been a direct party thereto. However, we need not go this far, for the reason as already stated that the R.F.C. at the time it made loans to the bank had no knowledge of this provision. Certainly, and this we do hold, any contract made with Martin or the bank limiting liability on the stock purchased by the trust was in violation of the constitutional provision and void.

■ We now consider the status of the parties to this trust agreement stripped of its provision limiting liability. Defendant attempts to place himself as a shareholder in the trust in the same category as a stockholder in a corporation. It is true that no Illinois court has gone as far in fixing liability upon the stockholders of a corporation as did the Supreme Court of the United States in the recent case of Anderson v. Abbott, 321 U.S. 349, 64 S.Ct. 531. We need not speculate, however, on what the courts of Illinois would do under circumstances such as confronted the court in the Anderson case. This is so for the reason that there is a marked distinction, in our opinion, between a corporation and a trust. As was pointed out in Schumann-Heink v.

Folsom, 328 Ill. 321, 327, 159 N.E. 250, 252, 58 A.L.R. 485:

"The business trust is fundamentally different from the corporation. * * * The trustees of a business trust are analogous to the directors of a corporation, in that both are the managers of the business of their respective institutions, but there is an essential distinction between a trustee and a director, founded on the very nature of things. A trustee is the holder of the legal title of the trust estate and deals with it as principal, subject only to an equitable obligation to account to the beneficiaries of the trust estate. * * * A trustee is personally liable on his contract, but a director is not as long as he acts within his authority. A trust is no entity at all, while a corporation is an artificial person. A trust is an estate, the legal title to which is vested in a trustee and the equitable title to which is held by individuals who bear no contractual relations among themselves."

Applying this pronouncement to the instant situation, it would seem that the legal title to the property of the trust, including the bank stock, was vested in the trustees, with equitable title in the shareholders of the trust. This is consistent with Martin's status in the matter. He invested nothing in the purchase of the stock and had no connection therewith except that of a mere nominee designated for the purpose of holding title. He was neither the actual nor the equitable owner.

We therefore are of the view that the shareholders of the trust were the beneficial owners of its assets, including the bank stock, and that defendant on account of such ownership was liable in proportion to the interest which he held in the trust.

Furthermore, he was liable as one of the trustees in whom was vested the legal title to the trust property. In this connection, it is pertinent to note Golden v. Cervenka, 278 Ill. 409, 116 N.E. 273, wherein trustees were held liable for bank stock held in such capacity. A defense was made that by § 23 of the Illinois Corporation Act a trustee holding corporation stock was exempted from personal liability. The court (278 Ill. at page 442, 116 N.E. at page 286), in response to such defense, held that this section of the Corporation Act was not applicable to a trustee holding bank stock, for the reason that the bank was not organized under the Corporation Act. It then pointed out that the liability of the holders of bank stock was fixed by the Banking Act in accordance with the Constitution. This case is further support for the proposition that even the legislature itself is without power to give relief from the constitutional liability attaching to bank stock. The legislature being without power, as was held, to relieve a trustee holding the legal title to bank stock of constitutional liability, it would seem to follow that the courts are also without power, and certainly an agreement of the parties in this respect would be a nullity.

The defense is also made that plaintiff, having elected to take judgment against Martin in whose name the stock was registered, is now precluded from taking a judgment against the defendant. This same contention has on two occasions been decided by this court adversely to the defendant. Reconstruction Finance Board v. Pelts, 7 Cir., 123 F.2d 503; Reconstruction Finance Board v. Barrett, 7 Cir., 131 F.2d 745. It is argued, however, that since our decision in those cases the Illinois Appellate Court has in Capetti v. Allborg et al., 319 Ill.App. 643, 49 N.E.2d 795, decided to the contrary. This decision is reported only in abstract form, but the material portions have been quoted in defendant's brief and we are of the view that it is of no assistance to the defendant. In the Capetti case, the court apparently followed its previous decision in Trupp v. First Englewood State Bank, 307 Ill.App. 258, 30 N.E.2d 198. The former case was the result of a new suit, while the latter developed from supplemental proceedings. In both cases there had been a prior suit adjudicating certain parties as the actual owners of bank stock. In both cases the court held that the decree in the former case was final and that the same question was not again open to litigation. In neither case, however, was there a reservation of jurisdiction. Otherwise the court would undoubtedly have reached a different conclusion. In the instant case, the judgment was against Martin as the record owner of the stock and the decree contained an express reservation of jurisdiction (heretofore quoted) to proceed against any and all persons who might be liable on account of the bank stock in suit. Subsequent to this decree plaintiff discovered the existence of the

trust agreement and the relation sustained by defendant and others to such agreement. Certainly there can be no question of the court's jurisdiction in the instant case, and we know of no decision in Illinois that would preclude the court from rendering judgment against the actual or beneficial owners of bank stock under the circumstances of this case.

A further defense may really be divided into two parts: (1) that plaintiff promised orally not to sue defendant, in consideration of defendant's promise and undertaking to produce and make available to plaintiff all the books and records of the trust syndicate and to disclose all facts in relation thereto and defendant's compliance with the terms of the agreement, as a result of which plaintiff collected large sums on account of the Martin decree; and (2) that plaintiff delayed in filing suit against Goldberg from 1937 until 1941, by reason whereof plaintiff is guilty of laches. The first part of this defense, which amounts to estoppel, was waived by defendant's counsel at the hearing prior to the entry of the instant judgment and he is in no position to raise it here. Moreover, we think there is no merit in such a defense. True, it is shown by the testimony of the defendant (deposition testimony taken prior to the hearing) that such a promise was made by an attorney for the R. F. C. The attorney who it was alleged made such promise denied that he did so, in the form of an affidavit. There is no contention that the attorney was authorized to make such a promise and we know of no theory upon which plaintiff would be bound.

The defense of laches is predicated largely upon the delay in bringing suit. As has already been noted, the judgment against Martin was entered May 1, 1937, and defendant was not made a party until the filing of an amended complaint on July 8, 1941. In Luttrell v. Wyatt, 305 Ill. 274, 283, 137 N.E. 95, 98, the court in discussing the defense of laches, stated:

"Mere delay alone, for a period less than that covered by the statute of limitations, is not laches that constitutes a defense. It is only when the delay is accompanied by some other element, rendering it inequitable for the complainant to assert his right, that the laches will bar his right within the statutory period."

See also Chicago Medical School v. Wilson, 341 Ill. 170, 179, 173 N.E. 168. It is argued that defendant's position changed by reason of the long delay in asserting liability against him. However, there is no allegation in his answer or otherwise as to how or in what manner the delay had worked to his prejudice.

In this connection, we note defendant's contention that there were genuine issues of fact sufficient to preclude the entry of a summary judgment, and the main challenge in this respect is that such issue of fact was raised by the plea of laches. We think this contention must also be rejected. We are unable to discern how any evidence could have properly been received which would have assisted defendant on this plea. This defense as well as others in the main raise questions of law rather than of fact, and we think it was a proper case for summary judgment.

This brings us to the contention that the court improperly allowed interest from May 1, 1937, the time of the entry of the original judgment against Martin. Defendant points out that both the complaint and the amended complaint fail to allege facts entitling plaintiff to recover interest and that there is no prayer for such relief. In view of Rule 54(c) of the Rules of Civil Procedure (heretofore quoted), we are of the view that a failure in this respect is not fatal to the allowance of interest. Even so, however, this does not dispose of the question as to the date from which interest should be charged.

Plaintiff seeks to sustain the allowance from May 1, 1937 upon equitable principles, and cites in support of its contention two recent decisions of this court, the Pelts and Barrett cases, supra. It also cites Golden v. Cervenka, supra; Duncan v. Dazey, 318 Ill. 500, 527, 149 N.E. 495; and Thompson v. Davis, 297 Ill. 11, 21, 130 N.E. 455. The Pelts case sustains the plaintiff's theory under the facts of that case. So far as disclosed, the question was not raised in the Barrett case; at any rate, the opinion contains no discussion of the interest question.

We suppose that a right to recovery, predicated upon equitable principles, is dependent upon the facts of the particular case. In this respect, there is a marked contrast between the facts of the Pelts and those of the instant case. In the

former, the real owner of the bank stock had furnished the lawyers to defend the suit against the registered owner and there was no question but that he was the real owner. In fact, only one question was involved in the suit, and that was whether there could be a judgment against both the record and the real owner, and even this question had previously been decided by this court adversely to appellant's contention.

On the other hand, in the instant case the defendant, so far as this record discloses, had nothing to do with the defense of the original suit. About a month after the original judgment was entered, defendant, at plaintiff's request, produced the trust agreement. Thus, in June 1937, plaintiff acquired all the facts relative to the trust agreement and defendant's interest in or connection therewith, including the bank stock here involved. There is no allegation or showing that any demand was made upon the defendant for payment until the filing of the amended complaint on July 8, 1941. Nor is any reason shown why plaintiff waited more than four years before asserting such liability. It is true that defendant had knowledge of the original judgment and of a possibility that the R. F. C. might assert a liability against syndicate members, as is evidenced by a letter signed by the defendant and others. We know of no reason, however, why defendant was under any duty either legally or equitably to deny liability prior to its assertion by the R. F. C., either by demand for payment or by the commencement of suit. Furthermore, there is no room to charge defendant with frivolity in denying liability. This is a bona fide law suit and the question of liability has never been directly decided by an Illinois court. Our decision against the defendant on the main issue does not militate against his good faith in denying liability.

None of the Illinois cases relied upon by the plaintiff or cited by this court in the Pelts case are concerned with interest on bank stock liability. In the Cervenka case the court applied the equitable principle that interest should be paid by a bank for funds retained without authority of law. It was allowed, however, only from the time "a demand was made for payment, which was when the cross-bill was filed." [278 Ill. 409, 116 N.E. 283]. The Thompson and Duncan cases recognize the general principle but furnish no support for its application in the instant case. There are a number of Illinois cases more nearly in point on the facts where this equitable principle has been denied.

In Munger et al. v. Jacobson, Receiver, 99 Ill. 349, the plaintiff in a bank stock suit claimed that the defendant was liable for interest from the time the bank closed, or at any rate from the time of commencement of suit. The lower court refused to allow interest prior to judgment, which ruling was sustained by the Supreme Court. This court, in Garvy v. Wilder, 121 F.2d 714, 716, in discussing the rule in Illinois as to the allowance of interest on bank stock liability, stated:

"The Illinois decisions hold that there is no liability for interest on stockholders' assessments."

The Munger case was cited as authority for this statement. In Cohen v. North Avenue State Bank, 291 Ill.App. 558, 10 N.E.2d 823, a judgment was obtained against a stockholder who had disposed of his stock prior to the closing of the bank. Plaintiff sought to recover interest from the time liability attached to the stock, that is, when the bank became insolvent. The court, while recognizing the general equitable rule, held that plaintiff was not entitled to interest prior to judgment.

The recent case of Lewis v. West Side Trust & Savings Bank, 376 Ill. 23, 32 N.E.2d 907, is perhaps more relevant than any of the other Illinois cases. There, the lower court denied plaintiff's claim for interest from the date the suit was filed. It was sought to apply the equitable principle on the ground that the defendant had been guilty of vexatious delay. In response to this argument, the court stated (376 Ill. at page 46, 32 N.E.2d at page 919):

"The mere fact of appearing and defending a suit is not considered such delay."

The court further stated:

"There is no claim of fraud in this case as the reason for the allowance of interest but plaintiffs say that final stockholders knew at all times that the liabilities which accrued during their ownership far outran the par value of their stock and, therefore, they should have paid when sued."

The court further in effect commented on the fact that the defense was in good faith. After citing the Munger case, the court (376 Ill. at page 47, 32 N.E.2d at page 919) stated:

"* * * but it is in line with the general policy of the courts of this State not to allow interest except where there is a statutory provision for it or justice and equity in a chancery suit, require its allowance."

Plaintiff's claim for allowance of interest, even from the time of the commencement of the suit, was denied.

We are unable to discern how any equitable theory would require the payment of interest on defendant's obligation prior to demand which was only made by the filing of the amended complaint. While it is not entirely clear under the Illinois cases just when it should commence to run, it is certain that it is a date not earlier than the demand for payment. In the Cervenka case (not a stockholders' liability suit), it was allowed only from the time of demand for payment; in the Cohen case, only from the time of judgment; in the Munger case, only from the time of judgment; and in the Lewis case, only from the time of an adjudication of the amount of defendant's liability. There is some doubt in the instant matter whether interest should be allowed from December 17, 1943, the date of judgment, or from July 8, 1941, the date of filing of the amended complaint. We conclude it was the latter, and so hold.

The judgment is modified accordingly, and, as so modified, is affirmed.